[S. F. No. 6122. In Bank.—February 11, 1915.]

C. J. MARTIN, Respondent, v. A. BECKER et al., Defendants and Respondents; T. B. HUBBARD, Defendant and Appellant.

[S. F. No. 6106. In Bank.—February 11, 1915.]

MOLLIE A. CAREAGA, Respondent, v. A. BECKER et al., Defendants and Respondents; T. B. HUBBARD, Defendant and Appellant.

[S. F. No. 6300. In Bank.—February 11, 1915.]

T. B. HUBBARD, Plaintiff and Appellant, and HENRY HART, Plaintiff and Respondent, v. L. M. BRINKER et al., Defendants and Respondents; HOME UNION (a Corporation), Defendant and Appellant.

MORTGAGE—STATUTE LIMITING ACTIONS ON—TAKING AND ENFORCEMENT OF ADDITIONAL SECURITY PERMITTED.—The provision of section 726 of the Code of Civil Procedure, declaring "there can be but one action for the recovery of any debt, . . . secured by mortgage upon real or personal property," is designed for the protection of the primary debtor, and not only can be waived by him, but has no applicability whatsoever unless the action which is brought directly affects his rights under the mortgage contract. The provision does not contemplate that because a man had taken a mortgage he could not take other independent security for his debt, and, if the contract for such security permitted it, enforce such contract without reference to the mortgage security.

ID.—WHEN TAKING ADDITIONAL SECURITY DESTROYS LIEN.—The taking of new or additional security operates to destroy an existing lien only in four classes of cases: 1. Where the destruction is worked by virtue of a positive declaration of law; 2. Where it is worked by the agreement and contract of the parties; 3. Where it is worked by necessary intendment growing out of the agreement of the parties, in that the taking of the later security is inconsistent with the continued existence of the lien, and, finally, 4. Where the nature of the earlier or later security, as that it is concealed or undisclosed, gives rise to a situation where it would partake of fraud upon other claimants to permit the earlier lien to be held valid, whereupon equity interposes and declares it to have been waived or lost by the

taking of the later security, or, what is in effect the same, erects a bar to its enforcement.

Id.—Mechanic's Lien—Characteristics of Lien—Lien not Lost by Taking Additional Security.—In this state, the lien of a mechanic is one of which world-wide notice is given by recordation, and is of the highest possible dignity, since it is secured not by legislative enactment but by the constitution of the state. Grave reasons must be shown in every case to justify a holding that such a lien is lost or destroyed, and the mere circumstance that the mechanic or material man has taken additional security for his debt should not be held so to operate. Nor should any conclusion that such additional security was meant to be a substituted security for the right to the lien be found except in the clearest case. Before such a conclusion is reached, it should plainly appear from the nature of the contract between the parties that the security was in fact substituted and not cumulative. No argument for the destruction of such a lien can be based upon the theory of its secrecy, when in this state no secrecy at all exists.

Id.—Materialman Taking Mortgage Security from Contractor—Lien not Lost.—A materialman, who furnished materials for use and which were used in the construction of a building, did not lose his right to a mechanic's lien by the mere fact that he took mortgage security from the contractor on his property for the value of the materials sold him, either by virtue of section 726 of the Code of Civil Procedure, nor by the just application of any rule of decision holding that the taking of other security destroys the right to such lien.

Id.—Finding—Money Paid by Contractor on General Account.—In an action to enforce the lien of such materialman, a finding that certain moneys that had been paid him by the contractor was paid on the contractor's "general account and not on account of materials furnished for the construction of the building" in question, is a sufficiently specific finding that the materialman's account of materials furnished to such building had not been reduced by such payments.

Id.—Finding in Favor of Lienor—Judgment—Failure to Grant Hearing as to Costs—New Trial.—The holder of a mechanic's lien, who by the finding of the court is entitled to prevail in the action for its enforcement and to have judgment accordingly, is likewise entitled to his hearing in court upon the question of the settlement of the legal costs which he has incurred, and the failure to grant him such hearing is ground for a new trial as to him.

Appeal by New Method—Notice of Appeal.—In perfecting an appeal under the new or alternative method, no notice of appeal is required, under section 941b of the Code of Civil Procedure, other than the notice of appeal filed with the clerk.

APPEAL from judgments of the Superior Court of Santa Clara County and from order refusing a new trial. John E. Richards, Judge in Nos. 6122 and 6300; J. R. Welch, Judge in No. 6106.

The facts are stated in the opinion of the court.

Will M. Beggs, and R. C. McComish, for Appellant T. B. Hubbard.

A. H. Jarman, for Appellant Home Union.

C. M. Lorigan, Owen D. Richardson, John W. Sullivan, H. E. Wilcox, D. M. Burnett, Will M. Beggs, R. C. McComish, Edwin H. Williams, A. H. Jarman, and Rogers, Bloomingdale & Free, for various Respondents.

HENSHAW, J.—The defendant Becker was a building contractor who became bankrupt. At the time of his bankruptcy he had completed for Mrs. Careaga and for Mr. Martin each a separate dwelling-house under valid statutory contracts. The final payments becoming due, Mrs. Careaga and Mr. Martin deposited the amounts of their payments in court with appropriate averments, asking the court to call in the lien claimants to the funds, apportion the money, and dismiss plaintiffs, respectively, without further costs or charge. In the case of Hubbard v. Brinker, Becker, because of his bankruptcy, abandoned the incompleted building which he was constructing for Brinker, and Hubbard and Hart sued Brinker to establish liens for materials furnished. Their cases were consolidated. Hubbard admittedly had furnished material to Becker, which material had been used in the construction of the buildings. No question arises over this nor over the validity of his lien claims in the matter of form or substantive proof to sustain them. But Hubbard had taken a mortgage upon real property owned by Becker, the contractor, which mortgage by its terms covered the debts of Becker growing out of these materials so furnished him. Because of the existence of this mortgage security the trial court decided against the validity of his lien claims for materials furnished and decreed that he could not participate in the funds admittedly due to the holders of valid liens.

Hubbard's appeals in all three of the above entitled cases present this as the principal question for determination. What is here said upon it is, therefore, applicable to all the cases. Certain points of minor significance arising separately in the different cases will receive their separate consideration.

The principal inquiry has been thus stated: "May the defendant Hubbard, as the creditor of the defendant Becker, retain and resort to the security of a mortgage lien, and at the same time claim and foreclose a materialman's lien for the satisfaction of an indebtedness which is found to be clearly covered by both liens?" The trial court and the court of appeals made answer (1) that by virtue of section 726 of the Code of Civil Procedure this could not be done. That section declares that "There can be but one action for the recovery of any debt, . . . secured by mortgage upon real or personal property." (2) That aside from the consideration of section 726, the fact that Hubbard had taken security from Becker for the latter's debt, even though that security was in the form of a mortgage upon real property of Becker, operated to annul the former's right to his materialman's liens.

1. At the outset it is important to note what changes the legislature made in the common-law rule, and therefore what it sought to accomplish in the declaration contained in section 726 of the Code of Civil Procedure. At common law a mortgage was a conveyance of title upon condition subsequent. That title became absolute and indefeasible upon breach of the condition. No right of redemption existed. The sole recourse was a resort to equity for relief against the forfeiture. Moreover, the mortgagee had his right to go to law to recover the amount of the mortgage debt and to enforce his recovery by imprisonment of the debtor. Nor did the doing of any of these acts impair his mortgage security. Under our statutory system the first radical change was to declare that a mortgage conveyed no title, but gave only the security of a lien upon the property. (Civ. Code, secs. 2888, 2920, 2923.) This radical change having been established, section 726 became the expression of a natural corollary to that change. To simplify procedure and to relieve the mortgagor (who was usually though not always the primary debtor) it was declared that but one action should be brought to enforce the mortgage debt. The mortgaged property thus

became the primary fund which must first be exhausted before any other remedy or relief could be had against the primary debtor. If this primary fund should prove insufficient to extinguish the debt, then in the same action a deficiency judgment could be docketed against the primary debtor. No longer could the primary debtor be pursued in an action which did not take into recognition the existence of the mortgage security. Otherwise it would be true to-day that if the primary debtor had given a mortgage upon his own property, and subsequently had sold it subject to the mortgage, the mortgagee could enforce the debt against the primary debtor without recourse to the mortgaged property, leaving the primary debtor to his chance of recovery over against his vendee. Or, again, the mortgage might have been given as security by one other than the primary debtor and with the understanding between the mortgagor and the primary debtor that the mortgaged property should first be exhausted in payment of the debt. If our existing rule did not obtain, the mortgagee could in like manner pursue the primary debtor without reference to the security. Every reason for the existence of the rule discloses and declares that it was designed for the benefit of the primary debtor, and indeed it is so decided. (*Ould* v. *Stoddard,* 54 Cal. 613; *Toby* v. *Oregon Pac. R. R. Co.,* 98 Cal. 494, [33 Pac. 550]; *Hibernia Sav. & Loan Soc.* v. *Thornton,* 109 Cal. 427, [50 Am. St. Rep. 52, 42 Pac. 447]; *Commercial Bank of Santa Ana* v. *Kershner,* 120 Cal. 495, [52 Pac. 848]; *Otto* v. *Long,* 127 Cal. 471, [59 Pac. 895]; *Hellyer* v. *Baldwin,* 53 N. J. L., 141, [20 Atl. 1080].) This provision then, being thus clearly designed for the protection of the primary debtor, is one which he not only can waive (Civ. Code, sec. 3513; *Hibernia Sav. & Loan Soc.* v. *Thornton,* 109 Cal. 427, [50 Am. St. Rep. 52, 42 Pac. 447]; *Hellyer* v. *Baldwin,* 53 N. J. L. 141, [20 Atl. 1080]), but, still further, is one which has no applicability whatsoever unless the action which is brought directly affects his rights under the mortgage contract. And by that we mean this: that the law never contemplated that because a man had taken a mortgage he could not take other independent security for his debt, and, if the contract for such security permitted it, enforce such contract without reference to the mortgage debt. Indeed, our books are full of cases where the doing of this precise thing has been uniformly

countenanced and upheld, notwithstanding the fact that plaintiff's success in the action has resulted in the payment of his debt secured by mortgage, without recourse or reference to the mortgage security. Thus in *Knowles* v. *Sandercock,* 107 Cal. 629, [40 Pac. 1047], the action was brought against the stockholders for a liability of the corporation, which corporate liability was evidenced by its note secured by mortgage. It was urged that the mortgagee must first exhaust the mortgage security in the "one action" contemplated by section 726. This court said: "The note was due but the mortgage had not been foreclosed. This fact constitutes no defense for defendants. They are not affected by the fact that because of the mortgage only an action to foreclose could be brought against the corporation. The mortgage only affects the remedy against the mortgagor—the corporation. The liability of the stockholder, as has already been said, is primary in the sense that he is not a surety. He is not injured nor is he benefited by the fact that the corporation has given security. (*Sonoma Valley Bank* v. *Hill,* 59 Cal. 107.)" We have quoted this language because it succinctly declares the principle vital to this consideration. "The mortgage only affects the remedy against the mortgagor" or primary debtor. Again in *Adams* v. *Wallace,* 119 Cal. 67, [51 Pac. 14], the action was against an independent guarantor of a debt secured by mortgage and it was held that the action could be maintained and the payment of the debt enforced without regard to the existence of the mortgage because the action was upon an independent contract to pay the debt upon default of the principal debtor. Identically the same proposition was decided in *Carver* v. *Steele,* 116 Cal. 116, [58 Am. St. Rep. 156, 47 Pac. 1007], and *Kinsell* v. *Ballou,* 151 Cal. 754, [91 Pac. 620], where action was brought against the guarantors by indorsement of a promissory note secured by mortgage. Yet it is to be noted that in each one of these cases the result was the payment of the debt secured by mortgage without recourse to the mortgage security. Why was this permitted to be done? The answer is found in what has already been said; that these other actions not being directed against the primary debtor entitled to rely on the mortgage security, but being based upon independent contracts, were not within the spirit or meaning of section 726. The primary debtor or mortgagor alone, or

he holding under or in privity with him, may invoke section 726 for his own protection. It never has been, nor has it ever been declared to be the law in this state, that a mortgagee may not take security other and in addition to his mortgage security, and if the contract with the giver of such security permits, may not enforce his debt from this third party without reference to the mortgagor and his security. Indeed, in *Commercial Bank of Santa Ana* v. *Kershner,* 120 Cal. 495, [52 Pac. 848], one of the cases upon which respondents rely, it is said that "a debt may be secured by pledge, mechanic's lien, judgment lien, attachment or otherwise, and yet the security may be reinforced by a mortgage on the same or other property."

We may now with propriety turn to the cases which respondents cite as supporting their contention, for the purpose of determining whether any of the previous utterances of this court conflict with the views here expressed. The first of these is *Ould* v. *Stoddard,* 54 Cal. 613. Defendant had given to plaintiff a note secured by mortgage. In a foreign jurisdiction—the state of Ohio—plaintiff had brought a personal action upon the note and had secured a personal judgment against him. No part of the amount of the judgment so recovered had been paid. Thereafter in this state the plaintiff brought his action to foreclose the mortgage. This court quoted section 726 of the Code of Civil Procedure, declared that the plaintiff had brought his "one action," that in that one action he had not sought to enforce his security, and that he had therefore waived it. Certainly nothing in this case militates against the propositions which we have enunciated, but to the contrary it pronounces in accordance with what we have said, that the section was framed for the benefit of the mortgagor to relieve him from harassment in repeated litigations. The next case is *Bartlett* v. *Cottle,* 63 Cal. 366. Here a promissory note was given secured by mortgage. The payee of the note, the mortgagee, brought his action against the maker, the complaint being silent as to the mortgage. The existence of the mortgage was set forth as matter in abatement. The trial court held the security to be valueless and therefore the holder of the note to be entitled to prosecute his action without reference to the mortgage, upon the theory now well settled that if the mortgage is valueless there is no security to be enforced. (*Otto* v. *Long,* 127 Cal.

471, [59 Pac. 895].)    This court held that "On an examination of the testimony we are of opinion that the security was not without value," and therefore reversed the judgment, in effect telling the plaintiff that he must exhaust the security of the mortgage before obtaining a personal judgment against the mortgagor.    *Hall* v. *Arnott,* 80 Cal. 348, [22 Pac. 200], was an effort to foreclose a mortgage in the form of a deed absólute.    The action was between the successors in interest of the original parties.    It was held that through laches, by virtue of their failure to include or to have included this mortgage debt in an earlier action in foreclosure, the holders of the security had lost their right to the lien, and that the mortgage being in form a deed absolute, the owners of the property were in turn entitled to a decree removing the apparent cloud upon their title.    This does not amount to a declaration that the parties may not have more than one form and kind of security, but merely to a declaration that through their own neglect, growing out of the peculiar circumstances of the case, the mortgagees had lost their right to enforce one of their securities.    The next case is *Stockton Savings & Loan Society* v. *Harrold,* 127 Cal. 612, [60 Pac. 165].    This case is substantially the converse of the one last discussed.    Defendant McKee held security by way of mortgages.    He, a cross-complainant, set up these mortgages.    The trial court struck out a portion of his cross-complaint, preventing the foreclosure in the action before it of a lien upon a large tract of land. This court held that the action of the trial court was improper; that if the defendant were to sue in his own independent action of foreclosure he would lose the lien of that particular mortgage if it were omitted from the foreclosure and by virtue of the fact that he is brought in as a defendant and a cross-complainant he cannot be compelled to lose part of his security when thus forced to foreclose his mortgage.    *Commercial Bank of Santa Ana* v. *Kershner,* 120 Cal. 495, [52 Pac. 848], presented the following facts: Defendants were indebted to plaintiff upon their promissory notes.    Plaintiff began its action and attached certain real property of defendants.    Defendants then gave a mortgage upon the property.    This mortgage covered property not under attachment as well as the property under attachment.    Plaintiff proceeded to judgment in its attachment suit and sold out the interest of the defendants in the property under attachment.

There remained a deficiency judgment. Plaintiff then commenced its action in foreclosure, and all these matters having been set up in the complaint defendants' demurrer to that complaint was sustained. This court held that the taking of the mortgage under these circumstances was the creation of a new contract between the parties, that the debt did not become due under the terms of the mortgage until one year after its creation, that by reason of this novation plaintiff had no right to prosecute its attachment suit to judgment, but that the mere fact that the defendants in the attachment suit interposed no objection to plaintiff so doing, did not estop them from subsequently raising the objection that plaintiff's conduct, under the authority of *Ould* v. *Stoddard,* 54 Cal. 613, amounted to a waiver of the mortgage security. It is important to note that these actions were between the principals to the the mortgage contract, and that the parties objecting were the mortgagors themselves, who had suffered one action for the collection of their debt. This concludes the review of the authorities cited by respondents, and it is manifest that in them there is no decision, and indeed no utterance, in contrariety to the propositions we have enunciated, for here the action is not against the primary debtor— the mortgagor—and has no relation to nor bearing upon the mortgage contract. The mortgagor in this case was not even a necessary party to the action seeking to foreclose the materialman's lien. (*Russ Lumber etc. Co.* v. *Garrettson,* 87 Cal. 589, [25 Pac. 747] ; *Green* v. *Clifford,* 94 Cal. 49, [29 Pac. 331] ; *Yancy* v. *Morton,* 94 Cal. 558, [29 Pac. 1111].)

2. It is sometimes, but not always nor even usually, true, that the taking of new or additional security operates to destroy an existing lien. It so operates only in four classes of cases: 1. Where the destruction is worked by virtue of a positive declaration of law; 2. Where it is worked by the agreement and contract of the parties; 3. Where it is worked by necessary intendment growing out of the agreement of the parties, in that the taking of the later security is inconsistent with the continued existence thereafter of the lien, and, finally, 4. Where the nature of the earlier or later security, as that it is concealed or undisclosed, gives rise to a situation where it would partake of fraud upon other claimants to permit the earlier lien to be held valid, whereupon equity interposes and declares it to have been waived or lost by the taking of

the later security, or what is in effect the same, erects a bar to its enforcement. To one or another of these classes all cases decreeing the destruction of an earlier lien by virtue of the taking of later security are referable. Thus in *Barrows* v. *Baughman*, 9 Mich. 213, the builder's agreement with the owner was that he should take a mortgage upon the property in payment of his debt. The supreme court of Michigan held that under their lien law, by virtue of his acceptance of the mortgage upon the property, the builder had waived his right to a mechanic's lien, and also "that the statute creates no lien where the parties by their contract provide for a different security upon the same land for the same debt which the lien would otherwise secure." In this case the court declared the nonexistence of the Mechanic's Lien Law upon two of the grounds above enunciated—one, that by operation of law a lien was denied in such cases, the other, that by the intendment of the parties the existence of the lien was inconsistent with the taking of the mortgage upon the same land for the same debt, or, in other words, that the mortgage was substituted for the lien. To the same effect is *Gorman* v. *Sagner*, 22 Mo. 137. There the plaintiff, who had a mechanic's lien upon certain property, accepted from the owner promissory notes payable months after date and a deed of trust to the property impressed with the mechanic's lien. The supreme court of Missouri discussed and analyzed this later contract of mortgage and held that by its very terms it was inconsistent with the continued existence of the mechanic's lien, which must therefore be considered to have been waived by the intendment of the parties.

In *Willison* v. *Douglas*, 66 Md. 99, [6 Atl. 530], the Mechanic's Lien Law of that state provided that the lien should not be considered as waived "by receiving notes or other securities unless the same be received as payment or the lien be expressly waived." It was held that the taking of a mortgage—a contract under seal—upon the same property, was inconsistent with the operation of the lien, and that the lien was therefore "expressly waived by the legal effect of such express contract." *Weaver* v. *Demuth*, 40 N. J. L., 238, held that the agreement by the builder to accept a mortgage upon the property was inconsistent with the theory of the existence of a statutory mechanic's lien, basing the decision squarely upon *Barrows* v. *Baughman*, 9 Mich. 213. And in-

deed it may be here added that none of the cases pretends
to deny the equitable principle first declared in *Crawshay* v.
*Homfray*, 4 Barn. & Ald. 53, [106 Eng. Reprint, 856], to
the effect that "unless the special agreement be inconsistent
with the right of lien it will not destroy it." The same
principle is enunciated in *Peyroux* v. *Howard*, 7 Pet. (U. S.)
324, [8 L. Ed. 700], and announced and affirmed by every
court which has been called upon to consider the question.
*Grant* v. *Strong*, 18 Wall. (U. S.) 623, [21 L. Ed. 859], was
a case in which Strong had filed his bill in equity against
Grant to establish a mechanic's lien. Strong was to do the
brick work upon certain houses which Grant was building
and by agreement was to take one of the houses in payment
for his work. A conveyance was made by Grant of the lot
which Strong was to have, and placed in escrow, to be de-
livered to Strong when his work was completed. Differences
arose between the parties during the progress of the work
and a new agreement was entered into. The new agreement
provided that the work was to be paid for by Grant's nego-
tiable note, payable within three months from the date of
the completion of the work, and when so paid for, the escrow
conveyance by Grant to Strong should be canceled and given
up. A later agreement declared that the work had been
done, the promissory note given, and the escrow declared null
and void. The trial court decreed Strong a lien. The su-
preme court of the United States reviewed the contracts be-
tween the parties; declared that it was clear that under the
original agreement Strong was not to be paid in money at
all, but by the lot, deed to which was placed in escrow; that
under these circumstances no lien could accrue; that under
the second contract Strong did not give up his security, but
retained it and relied on it; that all of this was inconsistent
with the existence of a mechanic's lien and saying: "The
question whether a lien is obtained, or is displaced when it
once attaches, is largely a matter of intention to be inferred
from the acts of the parties and all the surrounding circum-
stances," concludes as follows: "In short, we are of opinion
that these agreements show an acceptance and reliance by
Strong on another and very different security for the pay-
ment for his work, inconsistent with the idea of a mechanic's
lien, and that no such lien ever attached in the case." *Mc-
Murray* v. *Brown*, 91 U. S. 257, [23 L. Ed. 321], was an

action to enforce a mechanic's lien given under the provisions of the federal statute. The trial court decreed the lien. The contract between the parties provided that the owner, by way of payment for the work done by plaintiff, would convey to him a certain lot at a stipulated price. The owner— the defendant—failed to make the conveyance and insisted that by virtue of the special contract plaintiff's remedy was at law for breach of the contract. The supreme court of the United States in the course of its discussion declared: "Cases may arise, undoubtedly, where the rights and responsibilities of the parties are so completely defined by the contract, that neither party is at liberty to claim anything beyond the terms of the contract, if the contract is in all respects fulfilled. Consequently, lien laws do not in general create a lien in favor of a materialman who has accepted in full a different security at the time the contract or agreement was made. Examples of the kind, such as a trust-deed or mortgage, may be mentioned, which are regarded as a species of security inconsistent with the idea of a mechanic's lien upon the same land for the same debt. (*Grant* v. *Strong,* 18 Wall. (U. S.) 623, [21 L. Ed. 859]; Phill. on Mechanics' Liens, sec. 117.) Such a security is regarded as inconsistent with the intent of the parties that a mechanic's lien should be claimed by the party furnishing building materials, as the owner may obligate himself to pay in money, land or any specific article of property; but, if he does not fulfill his contract by paying in the manner stipulated, the mechanic is entitled to his lien. (*Reiley* v. *Ward,* 4 Greene (Iowa), 22.)"

So far as this examination of authorities has proceeded we find that the actions are between the contractor and the owner of the property upon which the work was done, to enforce the lien upon that property, and we find that the adjudications are merely to the effect that the courts will consider each of these contracts according to its facts, and that when the contract between the parties is such as to force the conclusion that the intent of the parties was to waive the mechanic's lien, as where a mortgage is taken upon the same property, or as where the payment to the lien claimant was to be made by a deed of part of the same property, it is held that these contracts are inconsistent with the conception of a right to a mechanic's lien. In no one of them, however, is

the denial of the right to the mechanic's lien based upon the mere fact that the lien claimant has taken security other than that afforded by his lien. The decision in each case is based upon findings that the nature of the contract under which the security is taken forces the conclusion that there was a waiver of the right to the lien. Of these cases no criticism may be made, and with them no fault may be found.

We come now, however, to consider another class of cases laying down a much broader rule, to the effect that the taking of any other security by the lien claimant is a waiver of his right to his mechanic's or materialman's lien. Thus, *Trullinger* v. *Kofoed,* 7 Or. 228, [33 Am. Rep. 708], was an action by plaintiff to enforce a materialman's lien. Defendant Runey had likewise furnished material used upon the building and had taken the promissory note of the owner secured by mortgage on the property. He likewise sued to enforce his materialman's lien. The principal question discussed was whether the taking of the mortgage by Runey was a waiver of his right to a materialman's lien. It was held that Runey's right to a lien was waived by the taking of the mortgage upon the same property, the court saying: "We can see no reason for taking the mortgage, unless he contemplated indulgence to Kofoed beyond the time when he would have to enforce his lien. He might have taken the note in order to have the amount of the debt fixed and interest secured; but the mortgage was no better security than the lien during the time that the lien would continue. It is a rule that where a vendor takes a mortgage on the property sold he waives his vendor's lien, and it has been so held by this court. (*Pease* v. *Kelly,* 3 Or. 417; 6 Ves. 752; *Lagow* v. *Badollet,* 1 Blackf. (Ind.) 416, 12 Am. Dec. 258; *Gilman* v. *Brown,* 1 Mason, 191, [Fed. Cas. No. 5441]; *Williams* v. *Roberts,* 5 Ohio, 35; 4 Kent. Com. 154; Houck on Liens, sec. 202.) And there seems to be no difference in principle between vendor's liens and the liens of mechanics, and it has been so held in many cases. (*Kinzey* v. *Thomas,* 28 Ill. 502; *Gardner* v. *Hall,* 29 Ill. 277; *Gorman* v. *Sagner,* 22 Mo. 137; *Barrows* v. *Baughman,* 9 Mich. 213; Phillips on Liens, sec. 280, and cases there cited.) From these numerous authorities the rule seems to be well settled that where a mechanic takes a mortgage, either on the same property to which the lien attaches or on other property, that he thereby waives

his lien, and the reason is, as observed in many of the cases cited, that subsequent lienholders and purchasers have a right to rely on the record, and should be protected against secret liens.'' Of the first ground of decision in the Oregon case no criticism can be made. It is the familiar finding of an agreement between the parties whereby a mortgage is taken as substituted security for the lien.

But our review of the cases heretofore made shows that neither *Gorman* v. *Sagner,* 22 Mo. 137, nor *Barrows* v. *Baughman,* 9 Mich. 213, relied on by the Oregon court, supports the broad declaration that where a mechanic or materialman takes security on other property he waives his lien. *Gorman* v. *Sagner* and *Barrows* v. *Baughman* were both cases where the materialman had taken a mortgage upon the same property and it was held, as so repeatedly declared, that both by operation of law and by the intent of the parties the contract of mortgage upon the same property was a waiver of the right to the statutory lien. But one court alone sustains this broad declaration of the Oregon case, and that is the supreme court of Illinois. We find that court saying (*Kankakee Coal Co.* v. *Crane Bros.,* 138 Ill. 207, [27 N. E. 935) : ''We have held that 'taking other security, either on property or that of individuals not parties to the transaction, would have the effect to discharge the lien.' (*Brady* v. *Anderson,* 24 Ill. 110; *Kinzey* v. *Thomas,* 28 Ill. 502; *Gardner* v. *Hall,* 29 Ill. 277; *Croskey* v. *Corey,* 48 Ill. 442; *Clark* v. *Moore,* 64 Ill. 273.)'' We find the following declaration in *Brady* v. *Anderson,* 24 Ill. 110, without the citation of any authority in its support: ''While the taking of other security, either on the property or that of individuals not parties to the transaction would have the effect to discharge the premises from the lien, yet the mere settlement and adjustment of accounts . . . is in no sense a change of security, or the security of any description.'' This unsupported declaration seems to be founded upon an earlier discussion had in that same case, to the effect that the mechanic's lien awarded by statute is in derogation of the common law and is secret in its nature, since no notice of it is required to be filed for record, and therefore it should receive a strict construction. This case was followed by *Kinzey* v. *Thomas,* 28 Ill. 502, where the lien claimant had taken other security in the nature of a chattel mortgage. The supreme court of Illinois referred to its lan-

guage above quoted in *Brady* v. *Anderson,* and as an additional reason for its holding declared as follows: "The settled doctrine is, that a vendor of land waives his lien wherever he takes distinct security for the payment of the purchase money, such as a deposit of stock, a pledge of goods, a mortgage on real or personal estate, or the responsibility of a third person, and we can see no difference in principle between such a lien and the lien of the materialman; both are secret liens. *Conover* v. *Warren,* 6 Ill. 498, 501, [41 Am. Dec. 196], and cases there cited." Later decisions of the supreme court of Illinois have reaffirmed this doctrine. With the first reason given by the supreme court of Illinois in its holding that the taking of any other security destroys the right to a mechanic's lien, we need not take issue. It is based upon the fact that under the peculiar wording of the Illinois statute the lien is a secret lien, not required to be recorded, and therefore imperiling the rights of ignorant and innocent purchasers or encumbrancers of the property. This reason has no application in this state where recordation of the lien claim is required. Some force may attach by reason of the secret nature of the mechanic's lien in the state of Illinois to the second reason assigned, by which reason an identical parallelism is found between the vendor's lien and the mechanic's lien of the Illinois statute, but this force inheres only because of the secrecy of the lien. The vendor's lien is in the English and American law exceptional in character. It was an importation from the Roman civil law and found its recognition in the English system through its courts of chancery. The equitable principle was that the person who had secured the estate of another ought not in conscience to be allowed to keep it and not pay full consideration money, and that to enforce that payment it was just that it should be made a charge upon the estate so taken. But being from its nature a secret lien, being thus an intrusion upon and an exception to every principle of our jurisprudence, which frowns upon secret transactions of all kinds, some courts have criticised its existence, some states by statute have destroyed it, and every court has been swift to declare that the taking by the vendor of any security is a waiver of the lien. (2 Warvelle on Vendors, sec. 676; 2 Sugden on Vendors, chap. 19.) True it is that in this state the vendor's lien is expressly recognized by section 3046 of the Civil Code,

but equally true it is that all other rules and doctrines governing the existence and destruction of such liens are left to the principles established by courts of equity. To the contrary, however, the lien of the mechanic in this state is a lien, world-wide notice of which is given by recordation, and it is a lien of the highest possible dignity, since it is secured not by legislative enactment but by the constitution of the state. (Const. Cal., art. XX, sec. 15.) Grave reasons indeed must be shown in every case to justify a holding that such a lien is lost or destroyed. Certainly the mere circumstance that the prudent mechanic or materialman has taken additional security for his debt should not be held so to operate. Nor should any conclusion that such additional security was meant to be a substituted security for the right to the lien be found except in the clearest case. Before such a conclusion is reached, it should plainly appear from the nature of the contract between the parties that the security was in fact substituted and not cumulative. And, finally, no argument for the destruction of such a lien can be based upon the theory of its secrecy, when in this state no secrecy at all exists.

We have so far limited this discussion to an analysis of the cases which it is contended hold the destruction of the mechanic's lien. We have endeavored to show that the principles of most of these cases have been misunderstood and accordingly misrepresented, and that in the other cases, as in the Oregon case and Illinois cases, the principles declared are wholly inapplicable to our law. We may now sum up this matter by adding that the great weight of authority supports the views here expressed, and, without unduly prolonging this discussion, by quotations, we may cite 1 Jones on Liens, sec. 1101; Bender-Moss on Liens, sec. 630; Phillips on Mechanic's Lien, sec. 280; *Roberts* v. *Wilcoxson,* 36 Ark. 355; *Maryland Brick Co.* v. *Spilman,* 76 Md. 337, [35 Am. St. Rep. 431, 17 L. R. A. 599, 25 Atl. 297]; *Parberry* v. *Johnson & Co.,* 51 Miss. 291; *Peck* v. *Bridwell,* 10 Mo. App. 524; *Brumme* v. *Herod,* 56 N. Y. Supp. 670, [38 App. Div. 558]; *Boyle* v. *Robbins,* 71 N. C. 130; *Howe* v. *Kindred,* 42 Minn. 433, [44 N. W. 311]; *Kilpatrick* v. *Kansas City etc. Co.,* 38 Neb. 620, [41 Am. St. Rep. 741, 57 N. W. 664]; *Taliafero* v. *Stevenson,* 58 N. J. L. 165, [33 Atl. 383]; *Myers* v. *Humphries* (Tex. Civ.), 47 S. W. 812; *Hale* v. *Burlington etc. R. Co.,* 13 Fed.

203, [2 McCrary, 558]. And, finally, it may be pointed out that in this state it has been held that the right to enforce a mechanic's lien was not lost by reason of the fact that the plaintiff, by levying an attachment upon other property, thereby obtained additional security. (*Brennan* v. *Swasey,* 16 Cal. 140, [76 Am. Dec. 507].)

It follows herefrom that Hubbard, in taking mortgage security from Becker upon the property of Becker for the value of the material which he might sell to him, did not lose his right to a mechanic's lien, either by virtue of section 726 of the Code of Civil Procedure, nor by the just application of any rule of decision holding that the taking of other security destroys the right to such lien.

S. F. 6106: The evidence in this case showed that Becker had paid to Hubbard one thousand dollars which he directed should be applied on certain specified accounts, none of which was the Careaga account. The court found that Becker paid the one thousand dollars to Hubbard "on his general account and not on account of material furnished for the construction of said building for said Mollie A. Careaga." This is a sufficiently explicit finding that Hubbard's account with Becker on account of material furnished to the Careaga building was not reduced by any specific payments, and appellant has no just cause for complaint over this finding.

S. F. 6300: In this case the suit of Hubbard to foreclose his lien and the suit of Hart to foreclose his lien were consolidated. The Home Union, a corporation, was a defendant and cross-complainant. It was not given notice of the setting of the case for trial and did not appear at the trial. It moved for a new trial. The amount of its lien claim was $22.98. The court granted the motion conditionally, declaring that if the amount due the Home Union was deposited in court the motion would be denied. Subsequently the court entered its further order, reciting that the total amount due the Home Union was $26.98, and that Henry Hart had deposited twenty-seven dollars with the clerk of the court in full satisfaction of the claim and demand of the Home Union Company, and the motion for new trial was denied. This was irregular, in that the Home Union was not allowed to file a cross-bill and establish the amount to which it was entitled in addition to its claim of lien. The amount involved may be trifling, but the principle is of consequence. A party

under such circumstances who, by the finding of the court is entitled to prevail in the action and to have judgment accordingly, is likewise entitled to his hearing in court upon the question of the settlement of the legal costs which he has incurred.

It follows from the foregoing that Hubbard is entitled to share in the funds admittedly applicable to the payment of the liens by mechanics and materialmen, and that the Home Union is entitled to a reversal of the order denying it a new trial for the reasons indicated.

The motion to dismiss this appeal is denied. The appeal was taken under the new or alternative method. The notice of appeal was filed with the clerk thirty-one days after judgment was filed. No other notice of appeal was required. (Code Civ. Proc., sec. 941b; *Lang* v. *Lilley etc. Co.,* 161 Cal. 295; [119 Pac. 100]; *Fraser* v. *Sheldon,* 164 Cal. 165, [128 Pac. 33].)

Wherefore the judgments and orders appealed from are reversed and the causes remanded.

Shaw, J., Sloss, J., Melvin, J., Lorigan, J., and Angellotti, C. J., concurred.