[Civ. No. 3544. Third Appellate District.—July 23, 1928.]

BANK OF ITALY, Appellant, v. B. D. MacGILL et al., Defendants; HAMMOND LUMBER COMPANY (a Corporation) et al., Respondents.

Wood, Janeway & Pratt and S. T. Hankey for Appellant.

R. L. Horton and C. Newell Carns for Respondents.

PLUMMER, J.—This appeal involved three actions brought by the plaintiff to foreclose three separate mortgages and actions by the defendant Hammond Lumber Company, a corporation, and C. B. Kahl to foreclose certain liens. Judgment was entered covering the respective cases establishing the priority of the mechanic's lien. From this judgment the plaintiff Bank of Italy, as administrator, and Harshman appeal. All the actions were tried as one and are presented upon one transcript. The appeals are taken upon the judgment-rolls alone.

The transcript shows that the defendant B. D. MacGill was, on and prior to the tenth day of February, 1923, and also prior to the twenty-fourth day of February, 1923, the record owner of the title to the lots involved in this action. On the tenth day of February, 1923, the said B. D. MacGill

executed three separate mortgages on three separate lots, each being for the sum of $3,000, in favor of the Scarborough Company, which mortgages were thereafter recorded on the twenty-fourth day of February, 1923, and some time prior to the beginning of this action, assigned to the plaintiff herein. While the title to the lots in question stood in the name of B. D. MacGill, one A. E. Harshman was the real owner of all of said lots. At a date not stated, but prior to the twenty-fourth day of February, 1923, the said A. E. Harshman entered into a contract with the defendants Hammond Lumber Company and C. B. Kahl for the furnishing of certain labor and materials for the erection of a building upon each of the three lots involved in this action. At a date not stated, but prior to the twenty-fourth day of February, 1923, the defendant C. B. Kahl commenced work under his contract upon each one of the three lots included in the mortgages assigned to the plaintiff in this action. Likewise, prior to the twenty-fourth day of February, 1923, the defendant Hammond Lumber Company began delivering building materials for the erection upon each of said lots of buildings, which material was thereafter used in the erection of buildings upon each of said three lots. The building material, however, was not placed upon the lots on which the buildings were actually erected, but were placed upon adjoining lots.

On or about the twelfth day of February, 1924, the defendant A. E. Harshman, by an arrangement with the defendants Hammond Lumber Company and C. B. Kahl and apparently for the purpose of obtaining sufficient material and the performance of labor to complete said buildings, transferred all his interest in and to the lots involved in this action to one W. T. McAllister, said conveyance being made subject to all the liens and encumbrances upon said property. The conveyance also covered a large number of lots other than the three lots involved herein. Thereupon, the said W. T. McAllister executed a trust declaration in the following words and figures:

"This trust agreement, dated this 12th day of January, 1924, is to certify that the undersigned, W. T. McAllister, has taken title to the following described real estate in Los Angeles county, California, to-wit: Lots 63, 65, 66, 67, 68, 70, 72, 123, 124, and 125 of Tract 5906 as per map

recorded in book 62, pages 13, 14 and 15 of maps in the office of the county recorder of said county.

"Lots 52, 53 and 54, Block 'A' of Tract 5006, and 126, 128 and 130 of Tract 5906, subject to possession until sold; lots 2 and 4, Block 3, in Emery Park Tract and lot 1, block 4, in Emery Park Tract; also contract of sale with Meyering Land Company for purchase of lots 5 and 7, block 11, Emery Park Tract, and lot 27, block 12, Emery Park Tract, also order for deed on Hellman Commercial Trust and Savings Bank, whereby the trustee is about to take title to lot 127 of said Tract 5906; also notes and trust deeds as follows:

"Emma Fay, lot 129, in said Tract 5906, for $1750.00; Annie Richardson, lot 131 in said Tract 5906, for $1750.00; Walter and Pansy Williamson, lot 132 in said Tract 5906, for $1650.00;

"and that he will hold, dispose of and convey the same, together with any other property received hereunder and any and all securities and moneys or other property received or derived in any way, therefrom in trust for the use and benefit of the following named beneficiaries according to their respective interests as follows, to-wit:

"First: First, and in priority over any other interests hereunder, Hammond Lumber Company and others furnishing materials and labor to the extent of actual cost of labor and materials used to complete houses, garages and improvements on above lots and other accounts, including interest at seven (7%) per cent per annum, from their due dates, all such bills and accounts to be first approved by C. S. Anderson. For checking said construction work and accounts during the progress of the work, the Hammond Lumber Company may employ a suitable person to be on the job at a salary not exceeding that usually paid a carpenter foreman, upon advising the trustee in writing that this course appears to be required to safeguard their interests, and thereupon the trustee shall out of the trust fund reimburse the said company the cost of such employment as a part of his current expenses hereunder. The accounts payable to the Hammond Lumber Company hereunder include three thousand three hundred ($3,300.00) dollars, which covers amount of accepted orders on mortgagee, and accepted by said mortgagee, on the following completed jobs now due: Lots 52, 53 and 54, block 'A,' Tract 5006; lots 29 and 30,

block 'E,' and lots 11 and 12, block 'F,' all in Tract 4689; which shall be the first item paid said company, and for the purpose of conserving the cash available for construction work, and agreeable to said company, such accounts may be deferred in favor of other accounts payable under this paragraph until after May 1st, 1924.

"Second: Thereupon, and subject to the above, this trust is to cover each of the miscellaneous accounts of A. E. Harshman in favor of said Hammond Lumber Company and others furnishing material for said job, and interest thereon at seven (7%) per cent per annum from January 2, 1924, as per statements hereto attached and approved by said Harshman subject to credit of three thousand three hundred ($3300.00) dollars, when paid under preceding paragraph and any collections from collateral held by said company, the release of which collateral shall be made upon full payment hereunder.

"The present amount of money held by the Scarborough Company is thirteen thousand five hundred sixty-four and 12/100 ($13,564.12) dollars, as verified by W. T. McAllister, and the trustee is to expend this amount for the completion of the buildings and payment of accounts approved by said C. S. Anderson, covering the lots mentioned in this agreement. Should there be any surplus remaining in this fund after the buildings have been completed it is agreed that the trustee shall cause such surplus to be paid to Hammond Lumber Company, who are then to credit the same to the general account of Harshman as reported by statement of Hammond Lumber Company attached hereto.

"Third: Thereupon, and subject to the above A. E. Harshman, the balance and remainder of the trust property and income therefrom. All compensation of the trustee and his attorney, as such shall be chargeable to and deducted solely from the amount payable under this item 'Third.' In the event there is no surplus to be distributed to said A. E. Harshman, hereunder, then the said expense shall be paid by the said A. E. Harshman. Distribution shall be made from time to time as funds are received from sales or otherwise, and at the same time, and whenever it shall be required by the trustee to convey title to any lot, or lots held hereunder, any lien or claim held by or under the beneficiaries hereunder, in respect to labor or materials fur-

nished for any building or improvement on any of the trust property required to be conveyed free therefrom, shall be duly released and waived in consideration of the beneficial rights hereunder.

"The trustee shall have full power to manage and control the trust property and to deal fully and expeditiously therewith; the purpose hereof and powers respecting real estate being subject to the provisions of the Civil Code of California; to sell, transfer and convey any of the real estate at any time held by him hereunder, at such price, not less than the scheduled price approved by said C. S. Anderson, hereto attached, and upon such terms and conditions as the trustee may determine, and to take in part payment therefor the note or notes of the purchaser, secured by first or second mortgage or deed of trust upon the property sold and conveyed by him and or other property, and to take in part payment therefor, to an extent not exceeding one-third of the sale price in any case, any other real estate of the purchaser, at such valuation as he shall determine, and to exercise all the rights of owner and holder of such notes, securities or other property, and to sell, assign, pledge, transfer and otherwise dispose of and turn to account any notes, securities or other property, at any time held by him hereunder; to cause any real estate to be transferred to a third person for the purpose of providing for the refunding of any loan secured thereby; to pay all taxes, liens, or charges of whatever nature at any time existing against any of the trust property; and to pay or satisfy any debts or claims on such terms and upon such evidence as the trustee may determine. It shall not be the duty of the purchaser of any part of said property to see to the application of the purchase money paid therefor; nor shall anyone other than C. S. Anderson who may deal with said trustee be privileged or required to inquire into the necessity or expediency of any act of said trustee, or of the provisions of this instrument.

"The trustee shall be entitled to deduct from the income or proceeds of sale arising hereunder, any commissions at the board rate, costs or expenses incurred by him incidental to the execution of the trust hereunder, and likewise to be reimbursed therefrom all sums of money to the payment of

which he, by reason of being trustee, may be held liable or subjected by way of damages, penalty or fine.

"The trustee may resign his trust at any time by written instrument executed by him and delivered to any one or more of the beneficiaries, and in the event of vacancy in the office of trustee, however, caused while this trust shall subsist, and so often as the same shall occur, Hammond Lumber Company, W. B. Scarborough Company and A. E. Harshman of Los Angeles, California, or any two of them are hereby authorized and empowered by any writing executed and acknowledged by them in the manner provided for the execution of deeds to real estate in the State of California, to nominate and appoint any person to be trustee thereof, in the place of the trustee previously acting hereunder, and thereupon and so often as a new trustee shall be so appointed, the trust property and all powers, authorities and discretions herein given to the trustee shall immediately vest in the new trustee so appointed as fully and effectually as if he had been the original trustee hereunder.

"This trust agreement shall not be placed on record in recorder's office of said Los Angeles county, and the recording of the same shall not be considered as notice of the rights of any person hereunder, derogatory to the title of said trustee or his successor in trust. Three years from date, if any property remains in this trust, the trustee shall convert the same into cash by selling such property at public auction, upon notice of sale, published at least once a week for three successive weeks in a newspaper of general circulation, published in the city of Los Angeles, California, and distribute the proceeds to the beneficiaries hereunder, after deducting the expenses incidental thereto.

"In witness whereof, said W. T. McAllister has hereunder affixed his signature and seal the day and date above written.

"W. T. McAllister.  (Seal)

"In the presence of
        "Alva E. Harshman.
"Accepted:
            "C. S. Anderson, for Hammond Lumber Co."

Only two questions are involved, which are: First: Whether or not the Hammond Lumber Company furnished materials previously to the recording of the plaintiff's mortgages; second: Whether or not the defendants Hammond

Lumber Company and C. B. Kahl waived their right to mechanics' liens.

The findings of the court are to the effect that the defendant C. B. Kahl had begun work upon the lots in question, and that there were visible evidences upon the lots in question of the work being performed by C. B. Kahl prior to the time when the mortgages in question were recorded by the plaintiff's assignor. The court also found that the Hammond Lumber Company had begun the delivery of building materials for the erection of buildings upon the lots in question prior to the date of the recording of the mortgages now held by the plaintiff. The point made by the appellant as to the delivery of materials is that materials delivered by the Hammond Lumber Company were not actually placed or delivered upon the lots on which the buildings were erected, but that the lumber and other building material was piled or placed upon an adjoining lot, and, therefore, that the plaintiff's mortgages should be given priority. Appellant's argument in this behalf is interesting but not very convincing. Section 1186 of the Code of Civil Procedure, which gives a materialman a mechanic's lien, does not provide that a lumber company shall pile the lumber actually delivered for the building upon the lot where the building is to be erected. That section reads: "The liens provided for in this chapter are preferred to any lien, mortgage, or other encumbrance which may have attached subsequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished; also, to any lien, mortgage, or other encumbrance of which the lienholder had no notice, and which was unrecorded at the time the building, improvement, or structure was commenced, work done, or the materials were commenced to be furnished." By this section, the lien attaches as soon as the work is begun or as soon as materials are commenced to be furnished. In the case at bar the findings show that work had been begun upon the premises on which the buildings were to be erected. It is true that the work begun upon the lots in question was work being done by the defendant C. B. Kahl, but the work, as found by the court, being upon the lots adjoining, on which the lumber was piled, gave visible evidence and information to anyone as to the lots upon which the build-

ings were to be erected, and for which buildings the materials were being delivered. We cannot shut our eyes to what is common knowledge to everyone who lives in a city, that building materials are not piled upon the lot where the building is to be erected or is being erected, but is ordinarily and commonly delivered upon and piled upon the streets. We can see no logical distinction between delivering materials upon the streets and upon adjoining lots. If the work is being done upon the lots, indicating, as found in this case, where the buildings are to be erected, all persons having to do with the lots are immediately placed upon notice.

The court having found that labor was being performed by the defendant C. B. Kahl and materials also being furnished by him, and also that materials were being furnished by the defendant Hammond Lumber Company prior to and at the time of the recording of the mortgages upon which plaintiff bases its actions, it becomes wholly unnecessary for us to review the argument based upon the case of *McClain* v. *Hutton,* 131 Cal. 132 [61 Pac. 273, 63 Pac. 182, 622], and sections 1183 and 1186 of the Code of Civil Procedure as they read at the time of the decision of the case of *McClain* v. *Hutton* and the subsequent amendments thereto, for the simple reason that whether there was or was not any contract between the owner of the lots and the contractor, is wholly immaterial. The court has found that the priority of the mechanics' liens asserted by the Lumber Company and by C. B. Kahl rests upon the fact of the priority of the beginning of their work and the commencement of the delivery of materials. Under section 1186 of the Code of Civil Procedure, that is all that is necessary to give priority.

This brings us to the only question having any merit presented by these appeals, to wit: Have the defendants Hammond Lumber Company and C. B. Kahl waived their mechanics' liens? The title to the lots involved, and which were apparently placed under the control of the said W. T. McAllister, was not vested in either one of the defendants. The fact must also be taken into consideration that a large number of lots were included in the trust declaration, and, therefore, we conclude, were covered by the deed of conveyance made to McAllister. The deed referred to is not set out in the findings, and as these appeals are

based upon the judgment-roll alone, we cannot assume anything as to the contents of the deed which would be detrimental to the interests of the respondents upon these appeals. It cannot be assumed that this deed was made conditional upon the waiver of any mechanic's lien to which the defendants then had a right or might subsequently acquire by reason of their performance of labor and the furnishing of building material. There is nothing in the record which would place the defendants Hammond Lumber Company and C. B. Kahl in the position of mortgagees having only one right of action, to wit, to foreclose a mortgage under section 726 of the Code of Civil Procedure. This is not a case where the mechanic's lienholder has taken a mortgage upon the identical lot upon which he asserts a mechanic's lien. It appears to be held under such circumstances that limited by section 726 of the Code of Civil Procedure, to one form of action for the foreclosure of a mortgage, the acceptance of a mortgage by the mechanic's lienholder waives his mechanic's lien by reason of the fact that his remedy being limited to one form of action under the section referred to, is inconsistent with the further assertion of a mechanic's lien. In the case at bar, the testimony not being before us, we must conclude that there was nothing in the deed of conveyance made by Harshman to McAllister which limited the right of action then possessed or subsequently acquired by either one of the materialmen. The declaration of trust, as we have stated, shows that W. T. McAllister had taken title to a large number of lots for the purpose of paying off all of the mortgages and liens that might be upon the three lots in question. The liens were to be discharged and paid off according to their priority. The record does not show that C. B. Kahl ever agreed to the declaration of trust, and while it does show that one C. S. Anderson apparently signed for the Hammond Lumber Company, we do not find anything that indicates the existence of an intention on the part of either one of the materialmen to surrender their liens until they had been paid in full for the amount of their claims. While the declaration of trust purported to limit the action of the trustee to a period of three years, there is not a word which indicates that the materialmen agreed to any postponement of the assertion of their right to me-

chanics' liens. No question is made as to the validity of the liens, as to their having been filed within the time allowed by law or of the commencement of foreclosure proceedings thereon. The one point only is urged—that of waiver. Before considering this question it is proper to state that the decisions are not at all harmonious upon just what act amounted to a waiver, nor are the decisions of those states where a mechanic's lien rests upon the common law alone of much assistance in determining whether there has or has not been a waiver. In the state of California a mechanic's lien is a matter of constitutional right (sec. 15, art. XX, state constitution), and by the code provisions becomes a matter of record. Thus, all of the decisions of other states which have to do with secret liens or of which the public can have no notice until an action to foreclose the same has been brought, are not of any weight in this state other than in so far as most of them hold that in determining whether a lien has or has not been waived, the question of intention enters largely into the consideration. In this state the rule that prevails is well stated in 17 California Jurisprudence, page 161, section 107, to wit: "Grave reasons must be shown in every case to justify a holding that a mechanic's lien has been lost or destroyed. The mere circumstance that a claimant has taken additional security does not preclude the enforcement of the lien, nor may the conclusion that the additional security was meant as a substitute for the right of the lien, be reached, unless the fact plainly appears from the nature of the contract between the parties." Following this statement a number of illustrations are given as to when materialmen have not lost their liens. In states having no constitutional provision such as ours, there is a diversity of opinion as stated, and this diversity is shown by the text in 40 Corpus Juris, page 322, as follows: "In some states the rule is that a mechanic's lien is waived by taking any other security for the debt, while in other states the taking of other security is not a waiver of the mechanic's lien, unless there is an express agreement to that effect, or such was the intention of the parties, or the security is inconsistent with the existence or enforcement of the lien." And, further, the same text-writer, on page 323 of the same volume, lays down the rule: "It has been held that the lien is waived by taking a mortgage on the

property subject to the lien, but a considerable number of authorities take the position that a waiver does not result where the parties do not so intend, and the rights of third parties are not infringed," etc. It may be here stated that there was absolutely nothing in the so-called declaration of trust, assuming that it is binding upon the parties, that limits or infringes upon any of the rights of the plaintiff in the actions under review. As we have stated and as shown by the decision in the case of *Simons Brick Co.* v. *Hetzel,* 72 Cal. App. 1 [236 Pac. 357], the rights of the materialmen related back to the date when they began doing work and furnishing material, which was prior to the accrual of the rights under which the plaintiff claims, and, therefore, the taking of additional security by the materialmen would not infringe upon the rights of the plaintiff, but would rather tend to safeguard those rights and leave to the holder of the mortgages a more valuable security than otherwise would exist. It may be here stated that the record does not show that anything was ever done by the trustee or any other person in and by virtue of the declaration of trust, and apparently it was abandoned by all parties.

The cases cited by the appellant to the effect that the taking of additional security is a waiver of a lien are all reviewed by the Supreme Court in the case of *Martin* v. *Becker,* 169 Cal. 301 [Ann. Cas. 1916D, 171, 146 Pac. 665], and are held to be inapplicable by reason of the constitutional provision to which we have referred. The Martin case makes plain that the reason which applies to a waiver of a secret or common-law lien has no application when applied to a lien that must, necessarily, for both its creation and enforcement, be made a matter of public record. The opinion in the Martin case, in referring to the taking of additional security, uses the following language: "Grave reasons indeed must be shown in every case to justify a holding that a lien is lost or destroyed. Certainly the mere circumstance that the prudent mechanic or materialman has taken additional security for his debt should not be held so to operate. Nor should any conclusion that such additional security was meant to be a substituted security for the right to the lien be found except the clearest case. Before such a conclusion is reached it should plainly appear from the nature of the contract between the parties that the security

was in fact substituted and not cumulative. And, finally, no argument for the destruction of such a lien can be based upon a theory of its secrecy, when in this state no secrecy at all exists.'' The determination of the case of *Martin* v. *Becker,* as we read it, turned upon the question whether the taking of a mortgage by Hubbard from the contractor Becker operated as a waiver of the lien asserted by Hubbard by reason of the provisions of section 726 of the Code of Civil Procedure limiting the form of action for recovery of a debt secured by mortgage. It was there held that Hubbard's right of action to obtain payment was not limited, and, therefore, that he had a right to enforce his lien. In the case at bar, as we have stated, the conveyance was not made to the materialmen. If they acquired any additional security, it was based entirely upon the declaration of W. T. McAllister. The record is silent as to whether the Hammond Lumber Company ever consented to or ratified or agreed to be bound by, or to limit any of its rights by reason of such declaration, nor does the declaration bear the signature of the defendant C. B. Kahl. But, assuming that both of the materialmen were agreeable to the taking of the additional security, we do not find any language therein from which it necessarily must be concluded that the materialman intended to waive any rights as lienholders or intended to limit any right of action which they might have to enforce liens upon the three lots in controversy. If the transaction as disclosed by the record, constituted any security whatever, it simply gave to all parties additional property from which the amount of their claims might be realized. This is not sufficient to justify the conclusion that any existing rights were intended to be waived. The right to enforce the mechanics' liens against the three lots upon which the buildings were erected would not be inconsistent with the right of all parties to have additional property sold by the trustee and the proceeds applied to the payment of the indebtedness of A. E. Harshman.

The judgment of the trial court is affirmed.

Finch, P. J., and Hart, J., concurred.