[Civ. No. 30552. First Dist., Div. Two. Apr. 23, 1973.]

VALLEY TITLE COMPANY, Plaintiff, v.
PARISH EGG BASKET, INC.,
Defendant, Cross-complainant and Appellant;
R. CALI & BRO., Defendant, Cross-complainant and Respondent.

## COUNSEL

John N. Norman for Defendant, Cross-complainant and Appellant.

Ruffo, Ferrari & McNeil and Mark Franich for Defendant, Cross-complainant and Respondent.

No appearance for Plaintiff.

## OPINION

**ROUSE, J.**—Plaintiff Valley Title Company commenced an interpleader action, seeking a determination as to which of several defendants was entitled to certain surplus funds remaining following a trustee's sale under a first deed of trust on certain real property. Two of the named defendants, Parish Egg Basket, Inc. (hereafter "Parish") and R. Cali and Bro. (hereafter "Cali") filed answers and cross-complaints asserting their respective rights to the funds in question. The trial court rendered a judgment awarding the funds in question to Cali, and Parish has appealed.

The facts are undisputed and may be summarized as follows: In 1965, Anselmo and Gaetana Azzaro and Frank and Velma Costantino were the owners of certain real property located in Santa Clara County. On June 25, 1965, the Azzaros and Costantinos executed a deed of trust in favor of Merlin and Janice Bohnett in the amount of $74,500. The deed of trust was recorded on July 1, 1965.

On August 16, 1967, declarations of homestead on the Santa Clara County property were executed by Anselmo Azzaro and Frank Costantino and recorded.

On March 28, 1968, Parish recorded an abstract of judgment in the amount of $3,880.42 against the Azzaros and Costantinos.

On April 30, 1968, the Azzaros and Costantinos executed a promissory note in the amount of $4,093.49 in favor of Cali. The note was secured by a deed of trust on the Santa Clara County property, and said deed of trust was recorded on June 7, 1968.

In August 1969, Parish executed a partial release of its abstract of judgment in order to permit a sale of a portion of the Santa Clara County property. The Azzaros and Costantinos, in return, executed a deed of trust in favor of Parish on that portion of the property retained by them. The Azzaros and Costantinos agreed that the deed of trust was given as security

for the payment of the abstract of judgment. The deed of trust was recorded on August 18, 1969.

In November 1969, Parish commenced foreclosure proceedings under its deed of trust, and on January 28, 1970, Parish purchased the property at the foreclosure sale.

The Bohnetts thereafter executed the power of sale under their first deed of trust; and the property was sold on July 16, 1970. A surplus of $5,213.40 remained following the sale, and Parish and Cali both asserted conflicting claims thereto. The trial court, as above noted, awarded the funds in question (less attorney's fees and costs) to Cali.

Parish takes the position on appeal that by virtue of the recordation of its abstract of judgment in March 1968, it acquired a lien prior to Cali's and that the trial court erred in finding to the contrary. Parish does not base its claim to the surplus funds upon the deed of trust which it subsequently obtained. Parish expressly concedes that said deed of trust, which was recorded after the deed of trust in favor of Cali, is junior to Cali's deed of trust.

█ Relative to the validity of the alleged lien created by the recordation of the Parish abstract of judgment, Parish contends that Cali had the burden of proving that the Azzaros and Costantinos had established a valid homestead on their property. Parish concedes that "Beginning with the case of BOWMAN V. NORTON, 16 Cal. 213 (1860) and continuing to the present day, a long line of cases has held that a judgment is not a 'lien' on a 'validly declared' homestead, or upon any surplus value therein over and above the statutory exemption . . . ." However, Parish asserts that Cali had the burden of proving the validity of the homestead and that Cali failed to sustain this burden because it did not establish that the declarations of homestead were in fact signed by the parties whose signatures appear on the declarations and that Cali also failed to establish that Anselmo Azzaro and Frank Costantino were married, were heads of families and were residing on the property when they recorded the declarations of homestead. In support of its position, Parish relies upon two cases, *Apprate* v. *Faure* (1898) 121 Cal. 466 [53 P. 917], and *Rich* v. *Ervin* (1948) 86 Cal.App.2d 386 [194 P.2d 809]. Both cases furnish direct authority for the proposition that where the validity of a homestead is in issue, the truth of the recitals contained in the declaration of homestead must be proved by independent evidence.

█ Cali attempts to avoid the holdings of these cases by asserting that their applicability is limited to situations where the validity of the home-

stead is under attack. Cali argues that Parish did not expressly challenge the homestead in its answer or cross-complaint and did not contend at the trial that the factual recitals in the declaration of homestead were untrue. Under such circumstances, Cali argues that the introduction into evidence of the homestead declarations themselves was sufficient to establish the validity of the homesteads. We do not agree.

In *Rich* v. *Ervin, supra,* it does not appear that the pleadings were any more explicit than those in the instant case. The parties merely alleged conflicting claims to the real property in question, and the question of the validity of the homestead apparently arose at the trial. The instant case presents a parallel situation, and Cali is incorrect in asserting that Parish did not raise the issue at the trial. Parish's counsel specifically stated, "There has been no proof of the validity of this homestead. There's been no proof that Azzaro and Costantino were married. There's been no proof that they resided on the premises, and you cannot use the homestead because we dispute its validity as proof of those two operative facts." Cali was thus clearly aware of the fact that Parish was attacking the validity of the homestead, and Cali in fact treated the question in its trial brief. However, it nevertheless chose to rely solely upon the declarations of homestead as proof of their validity. Clearly, under the rule of the *Apprate* and *Rich* cases, this proof was insufficient.

Cali contends that the judgment in its favor may nevertheless be upheld because even assuming that the homestead was invalid and that the recordation of the Parish abstract of judgment created a lien in its favor, Parish subsequently lost this lien when it took back a deed of trust from the Azzaros and Costantinos and foreclosed such deed of trust. We conclude that, on this point, Cali's position is clearly sound.

In the early California case of *Martin* v. *Becker* (1915) 169 Cal. 301 [146 P. 665], our Supreme Court described four situations in which the taking of new or additional security would operate to destroy an existing lien upon real property. One of the situations so described was where the parties had expressly so agreed and contracted, and another was "[w]here it is worked by necessary intendment growing out of the agreement of the parties, *in that the taking of the later security is inconsistent with the continued existence thereafter of the lien,* . . ." (P. 309; italics supplied.) The court then reviewed at length various out-of-state authorities on the subject and concluded, "So far as this examination of authorities has proceeded we find . . . that the adjudications are merely to the effect that the courts will consider each of these contracts according to its facts, and that when the contract between the parties is such as to force the conclu-

sion that the intent of the parties was to waive the mechanic's lien,[1] *as where a mortgage is taken upon the same property . . . it is held that these contracts are inconsistent with the conception of a right to a mechanic's lien.*" (P. 312; italics supplied.)

In the subsequent case of *Bank of Italy* v. *MacGill* (1928) 93 Cal.App. 228, 237 [269 P. 566], the court stated the rule as follows: "This is not a case where the mechanic's lienholder has taken a mortgage upon the identical lot upon which he asserts a mechanic's lien. It appears to be held under such circumstances that limited by section 726 of the Code of Civil Procedure, to one form of action for the foreclosure of a mortgage, the acceptance of a mortgage by the mechanic's lienholder waives his mechanic's lien by reason of the fact that his remedy being limited to one form of action under the section referred to, is inconsistent with the further assertion of a mechanic's lien."

The rule espoused in the *Martin* and *Bank of Italy* cases is clearly controlling of the case at bar. When Parish accepted a deed of trust on the same property upon which it claimed to have a judgment lien, it must be held to have waived said lien. Its sole remedy was to foreclose said deed of trust. (*Commercial Bank* v. *Kershner* (1898) 120 Cal. 495 [52 P. 848].) Since Parish's deed of trust was recorded subsequent to the recording of the deed of trust in favor of Cali and was admittedly junior to Cali's deed of trust, the trial court properly awarded the surplus funds here in issue to Cali.

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.

---

[1]The fact that the instant case involves a judgment lien, as opposed to a mechanic's lien, would not appear to be a valid basis for distinguishing the *Martin* case. In fact, the *Martin* court pointed out that there was no basis for distinguishing between a mechanic's lien and a vendor's lien.