[Civ. No. 13569.   First Dist., Div. One.   June 25, 1948.]

JAMES F. RICH, Appellant, v. FRANCIS J. ERVIN et al., Respondents.

I. Karmel and Joseph B. Bates for Appellant.

Licking, Hammack, Davis & Schmidt and James T. Davis for Respondents.

WARD, J.—Plaintiff appeals from a judgment in favor of defendants quieting title to certain property in San Mateo County. The property is described in the complaint, with an allegation of ownership in fee simple in plaintiff, and that defendants claim some title or interest therein adverse to plaintiff. There is a prayer that defendants set forth the nature of such claim; also that plaintiff's title be quieted and defendants enjoined from further asserting any claim adverse to plaintiff. The answer sets forth that defendants Ervin became the owners of the property "by deed dated June 8, 1942, executed and acknowledged by May E. Rich, to these defendants." The deed was recorded June 10, 1942.

On the date the complaint was filed two of the defendants were minors but attained majority during the trial of the action approximately four years later. The delay was caused by continuance granted under the provisions of the Soldiers' & Sailors' Civil Relief Act [54 Stats. 1178, 50 U.S.C.A. § 501 et seq.].

The evidence shows that in 1909, plaintiff and Mae Ervin lived together as man and wife. October 11, 1922, plaintiff took title to the land in question in the form of a grant, bargain and sale deed, which was duly recorded. April 30, 1923, a declaration of homestead was executed by plaintiff and Mae Ervin Rich on the real property and the dwelling house thereon; it was subsequently recorded.

Plaintiff and Mary Ervin were married October 7, 1930, in accordance with the provisions of Civil Code, section 79. A clergyman's certificate to that effect is an exhibit in the case. Mrs. Rich obtained an interlocutory decree of divorce on the ground of the husband's extreme cruelty on November 30, 1932. The decree provided ''That plaintiff is allowed to resume her name prior to her marriage to the defendant which was May E. Ervin, and is awarded the house and lot at 414 Wisnom Ave., San Mateo, Calif., and defendant is awarded the house and lot at Nadina Ave., Homestead, San Mateo, Calif., and the Buick automobile, community property of plaintiff and defendant.'' On or about January 3, 1933, plaintiff and Mrs. Rich resumed cohabitation.

January 3, 1933, plaintiff executed a deed of the property in question to May Ervin Rich, the deed setting forth ''That the said party of the first part, for and in consideration of the love and affection which he bears toward his wife and for the purpose of making her a gift, and also for the purpose of compensating certain advances and benefits of money and property which she brought to said party of the first part by and since their marriage, the said James F. Rich, does hereby give, grant, alien, and convey, unto his wife, said party of the second part, all that certain lot, piece or parcel of land situate in the City of San Mateo, County of San Mateo, State of California, and bounded and described as follows: . . .'' Following the above is a description of the property and reference to the dwelling house thereon. The deed further provides: ''TO HAVE AND ENJOY, all and singular the same, and every part and parcel thereof, as and for her separate estate, especially relinquishing for himself

and his heirs all right or claim to the same, or any part hereof, as community property, so that the same may be held by her as separate, and not in any respect as community property." The deed was recorded April 1, 1935.

On February 1, 1941, plaintiff and Mrs. Rich separated and about the same time the defendants Ervin took up their residence in the home of Mrs. Rich. February 11, 1941, Mrs. Rich caused to be filed the final decree of divorce awarding her the house and lot on Wisnom Avenue in San Mateo, California. The final decree contained the same provision as the interlocutory covering the disposition of the property.

Mrs. Rich entered the Community Hospital of San Mateo County on May 20, 1942, and gave her address 114 Wisnom Street and the name of "relative or friend" "Mr. Richard Ervin—Nephew—Above Address." On June 8, 1942, the deed, which is the subject of the main controvery, was executed; it was recorded June 10, 1942. According to the hospital records Mrs. Rich died June 9, 1942, at 1:55 a. m. Plaintiff caused the final decree to be set aside September 10, 1942.

The main questions involved in this appeal are: Was a valid homestead impressed upon the property so as to create the right of survivorship in the plaintiff, appellant herein? Is there substantial evidence to support the finding that delivery was effected by the deed of January 3, 1933, from plaintiff to Mrs. Rich? Is there substantial evidence to support the finding of the court below that the document dated June 8, 1942, is a validly delivered deed from Mrs. Rich to the three Ervin defendants?

The Declaration of Homestead is signed by plaintiff James F. Rich as *James Rich* and the name of *Mae* Ervin Rich appears thereon. (Emphasis added.) The "Declaration" contains the statement "that I am married, and the name of my wife is: *May* Ervin Rich, that my family consists of said wife only."

The question before this court is not what might follow upon the death of Mrs. Rich by the impressing of a valid homestead upon the property, under which circumstances the homestead would vest in Mr. Rich. (Prob. Code, § 663; Civ. Code, § 1265; *Spencer* v. *Stewart*, 202 Cal. 695 [262 P. 331].) Rather, the above declarations "that I am the head of a family; that I am married, and the name of my wife is: *May* Ervin Rich"—whereas the declarant was not in fact

married, and was not the head of a family—make the vital question involved: Was a valid homestead impressed upon the property? ■ The declaration is merely a step which tends to create a homestead (Civ. Code, § 1266-1269, 1263.) ■ The tests by which the validity of a homestead may be ascertained are the same whether the question is raised by a creditor or the heirs of a deceased spouse. (*Estate of Delaney*, 37 Cal. 176.) What, may be asked, is the effect of the recital in the declaration of homestead that plaintiff is the head of a family consisting of his wife May Ervin Rich? Either a married (§ 1263), or an unmarried (§ 1266), person may file a declaration of homestead. ■ Where the required acts have been substantially performed the construction of the declaration should be liberal, but there must be a substantial compliance or the declaration will be strictly construed. ■ The statement of an untruth relative to an essential requirement vitiates the document as the declaration must contain certain information. (Civ. Code, § 1267.)

■ Plaintiff contends that the recital in a declaration of homestead executed by a man and woman who are not married but living together openly as man and wife, is conclusively presumed to be "The truth of the facts recited . . . in a written instrument between the parties thereto, or their successors in interest by a subsequent title." (Code Civ. Proc., § 1962, subd. 2.) No case is cited in which a homestead declaration has been held to be a written instrument under the statute. A homestead is not a contract between parties, but is a right which is provided by the Constitution of California (art. XVII, § 1) that the Legislature may define the nature of a privilege in real property, which is distinct, clear and above the normal right of ownership. The Legislature in this state has provided the rules that govern "homesteads." (Civ. Code, div. 2, pt. 4, tit. 5, chs. 1, 2, 3.) Whether a homestead confers an immunity exemption or a benefit to the homesteader, it is still a privilege granted by the government and is not a contract in the form of an instrument in writing with a creditor or one of the beneficiaries of the homestead or any third party. "The very purpose of the homestead law is to protect the property from existing debts." (*Yager* v. *Yager*, 7 Cal.2d 213, 217 [60 P.2d 422, 106 A.L.R. 664].) "Homestead laws are founded upon considerations of public policy, their purpose being to promote the stability and welfare of the

state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune. The statutes are intended to secure to the householder a home for himself and family, regardless of his financial condition—whether solvent or insolvent —without reference to the number of his creditors, and without any special regard to the extent of the estate or title by which the homestead property may be owned. . . .

"The homestead exemption is designed, not merely for the protection of the husband or head of the family, but also for the benefit of the wife and children; it seeks to implement the obligation which is imposed upon the head of the family to provide for the support of the dependent members thereof." (26 Am.Jur. §§ 6, 7, pp. 10-11.) The truth or falsity of the contents of a declaration strikes at the heart of the validity of the homestead. A false statement—that the declarant is a married man, when in fact he is not, may give an unmarried woman in whom the property may appear to vest an illegal advantage in occupancy of the premises and result in defrauding creditors.

A "written instrument" may be generally defined as anything reduced to writing. "The terms 'instrument in writing,' 'instrument of writing' and 'written instrument' are descriptive phrases, with a legal meaning, implying an agreement or contract which the instrument contains, and of which it is a memorial." (44 C.J.S., p. 421.) As used in Code of Civil Procedure, section 1962, subdivision 2, it applies only to "the parties thereto, or their successors in interest." "Generally the term 'instrument' as applied to documents necessarily imports a paper writing; but every paper writing is not necessarily an instrument within the settled statutory meaning of the term. With reference to writings the term 'instrument' as employed in our statutes has been defined to mean an agreement expressed in writing, signed, and delivered by one person to another, transferring the title to or creating a lien on real property, or giving a right to a debt or duty." (*People* v. *Fraser*, 23 Cal.App. 82, 84-85 [137 P. 276]; see, also, *Weisbrod* v. *Weisbrod*, 27 Cal.App.2d 712 [81 P.2d 833].) The declarants herein did not contract with others, but accepted a privilege granted by the state. A declaration of homestead is not a written instrument between parties but a mere recitation of matters

that may be true or untrue. The incident of survivorship which is present in a valid homestead is not an agreement of parties but the result of the operation of law.

■ ''The mode in which a homestead is to be created, as well as the legal incidents which attached to its existence, are purely statutory.'' (*Security Loan etc.* v. *Kauffman,* 108 Cal. 214, 219 [41 P. 467].) ''. . . the homestead is not a technical one in the legal sense, until the required formalities have been complied with.'' (13 Cal.Jur. 413.) ''. . . *the provisions relating to the acquisition of a homestead are construed to be mandatory.''* (Emphasis added.) (13 Cal. Jur. 427, and cases cited.)

Civil Code, section 1261, provides that the phrase ''head of a family'' includes within its meaning: ''1. The husband, when the claimant is a married person; 2. Every person who has residing on the premises with him or her, and under his or her care and maintenance, either: (a) His or her minor child, or minor grandchild, or the minor child of his or her deceased wife or husband; (b) A minor brother or sister, or the minor child of a deceased brother or sister; (c) A father, mother, grandfather, or grandmother; (d) The father, mother, grandfather, or grandmother of a deceased husband or wife; (e) An unmarried sister, or any other of the relatives mentioned in this section, who have attained the age of majority, and are unable to take care of or support themselves.''

''The recital of the facts stated by the homestead claimant in her declaration is no evidence of the truth of such recitals. . . . The introduction in evidence of the declaration of homestead alone served the purpose of showing a compliance with the law, which demands the filing for record of a declaration containing certain recitals. The truth of these recitals must be proven *aliunde* whenever the validity of the homestead is attacked. The rights of the homestead claimant are created by the filing of a declaration of homestead in the form specified by the statute, coupled with the actual present existence of the facts recited in the declaration. . . . A valid homestead and a valid declaration of homestead are widely different.'' (*Apprate* v. *Faure,* 121 Cal. 466, 467, 468 [53 P. 917].)

It does not appear that at the time of the execution of the declaration Mr. or Mrs. Rich came within the provisions of Civil Code, section 1261. *Feintech* v. *Weaver,* 50 Cal.App.2d 181 [122 P.2d 606] is not controlling as applied to the facts of this case. Certain declarations in the Feintech case were

treated as surplusage, but in the present case Mr. Rich made a statement which he knew to be false. In *Schuler-Knox Co. v. Smith,* 62 Cal.App.2d 86 [144 P.2d 47], two declarations of homestead were filed. It was held (p. 98) that the wife failed to state in the declaration that her husband had previously filed a homestead and ''that she was filing the homestead for the 'joint benefit' of herself and her husband. Those omissions rendered the declaration fatally defective.''

There is no denial of plaintiff's contention that evidence is not received to contradict a conclusive presumption. (*Gayton v. Pacific Fruit Exp. Co.,* 127 Cal.App. 50 [15 P.2d 217].) A fair example is the execution of a joint and mutual will, wherein the parties agree with respect to property that may be held or transmitted from one status to another. Under such circumstances a will may constitute a contract. (*Estate of Watkins,* 16 Cal.2d 793 [108 P.2d 417, 109 P.2d 1].) However, considering a will not as a contract, but whether it was in fact a valid will, ''evidence outside the will may be introduced, not to alter its provisions, but to show that it was not intended . . . as a will.'' (*Estate of Janes,* 18 Cal.2d 512, 515 [116 P.2d 438].) Evidence relative to recitals in declarations of homestead was admitted in *Spencer v. Stewart,* 202 Cal. 695 [262 P. 331] and *Coca Cola Bottling Co. v. Feliciano,* 45 Cal. App.2d 680 [114 P.2d 604].

It has been suggested that Mrs. Rich was a party to this fraud upon the state. Her lack of candor in the recital of the declaration of homestead could not imbue or impregnate the germ of truth into plaintiff's statement and invest falsehood into truth.

Plaintiff did not offer proof of the recitals or testify as to the circumstances surrounding the making and recording of the homestead, but merely introduced the homestead. The existence of a homestead is a question of fact. The burden of proof was upon plaintiff. Findings thereon will not be disturbed if there is evidence to support the reasonable deductions reached by the trial court.

As previously stated a deed descriptive of the property was executed by plaintiff on January 3, 1933, to May Ervin Rich. Plaintiff claims that this deed was not validly delivered. The interlocutory decree of divorce between the parties awarded a certain parcel of land to plaintiff, and to defendant the particular land in question on this appeal. The deed was in ac-

cordance with the interlocutory decree. Plaintiff testified that the deed rested in a drawer to be recorded in the event that he should predecease Mrs. Rich. The deed was recorded two years after its execution, but plaintiff took no action until Mrs. Rich died, over seven years thereafter. The language heretofore set forth in the deed does not tend to uphold plaintiff's testimony.

Possession of a deed by the grantee constitutes *prima facie* evidence of delivery. It was incumbent upon plaintiff to produce evidence that there had been no delivery. (*Stewart* v. *Silva,* 192 Cal. 405 [221 P. 191]; *O'Neill* v. *O'Malley,* 75 Cal.App.2d 821 [171 P.2d 907]; *Butler* v. *Woodburn,* 19 Cal. 2d 420 [122 P.2d 17].) The evidence of plaintiff on this issue was rejected by the trial court. (*Willis* v. *Holback,* 33 Cal.App.2d 145 [91 P.2d 140].) "In the final analysis, the essential and controlling element which must be discovered in determining whether there has been delivery of a deed is the intention of the grantor and this essential matter of the grantor's intention is a question of fact which is to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question." (*Knudson* v. *Adams,* 137 Cal.App. 261, 267 [30 P.2d 608]; see, also, *Marlenee* v. *Brown,* 21 Cal.2d 668 [134 P.2d 770].) In this case there was substantial evidence to support the finding in reference to the delivery of the 1933 deed by plaintiff to Mrs. Rich.

The final major question in this case is whether the evidence is insufficient to support the finding that there was due execution and delivery of the deed dated June 8, 1942, by Mrs. Rich to defendants. It is contended that there was no valid subscription and no valid delivery of the deed.

It appears that Mrs. Rich was suffering from an incurable malady, and that her right side was paralyzed. A notary public who had come to the hospital showed the deed to Mrs. Rich, read its contents to her and asked if she desired to sign it. Mrs. Rich replied "Yes." Francis Ervin was present, also a cousin of Mrs. Rich, Anna Robertson, who brought the notary public at the request of Mrs. Rich. Both parties corroborated in substance the testimony of the notary, who had been told several times previously by Mrs. Rich that she wished to execute such a deed. The notary held a portion of the penholder as assistance to Mrs. Rich. Whether the notary or Mrs. Rich directed the muscular effort in signing the name was a question of fact to be considered in determining the physical

condition of Mrs. Rich as that circumstance might play a part in reaching a conclusion on her mental condition. In brief, did she know the contents and intend to sign the deed?

A great part of the evidence was directed to the question whether Mrs. Rich knew what she was doing on the afternoon preceding her death when she signed and permitted the notary to retain the deed for notarial acknowledgment. Plaintiff contends that Mrs. Rich was not mentally capable of signing and delivering the deed. This was the second visit of Mrs. Rich to the hospital. Attention is called to a carcinoma condition; that her death occurred the next day, but the hospital charts are silent covering her condition during the particular period of the visit of Mrs. Robertson, the notary and Francis Ervin, when the deed was signed. In *Estate of Powers,* 81 Cal.App. 2d 480 [184 P.2d 319], the record showed that a patient was irrational on "June 17th" but no entry with reference to mental condition on "June 18th." At p. 482 the court stated: "We cannot agree with appellant that the entries on the hospital charts constitute substantial evidence that the testatrix did not posses testamentary capacity on June 18. The critical inquiry is directed to the condition of the testatrix' mind at the very time of the execution of the will." Although the case does not involve competence to execute a deed, it sheds light on the question of the evidential effect of hospital records.

If one requests another to sign a document for him, and such signature is written in the presence of the party making the request, or if a person aids another to sign his name and the signature is acknowledged by words or acts, that is all that the law requires. (Civ. Code, § 3100; *Estate of Holloway,* 195 Cal. 711 [235 P. 1012]; *Yates* v. *Dyer,* 76 Cal.App. 288 [244 P. 950]; *Harris* v. *Harris,* 59 Cal. 620, citing Bishop on Contracts, 168.)

The question of the sufficiency of the evidence to establish delivery of the deed by Mrs. Rich to defendants is the subject of extended discussion in the briefs. This subject has been mentioned heretofore in referring to the deed from plaintiff to Mrs. Rich. The question requires only slight consideration. In the deed to defendants, as in all deeds, there must be some circumstance from which an inference may be drawn that there was a present intention on the part of the grantor to divest herself of title. (*Security-First Nat. Bank* v. *Leatart,* 75 Cal.App.2d 211 [170 P.2d 687]; *Marlenee* v. *Brown, supra.*)

Mrs. Rich had previously stated to the notary that she wanted the property "to go to the boys." The notary testified that he was satisfied as to her mental capacity when she signed the deed. The question of intent is one of fact. The statements made prior to the execution of the deed—that Mrs. Rich intended that the notary should visit her at her home and that she wanted the property to go to "the boys"—is in harmony with her conduct in signing the deed and permitting it to be notarized. "Thus, in cases involving the delivery of deeds, declarations of the alleged grantor made before and after the making of the deed are admissible upon the issue of delivery, and it is immaterial that such declarations are in the interest of the party producing them." (*Whitlow* v. *Durst,* 20 Cal.2d 523, 524-525 [127 P.2d 530]; *Dinneen* v. *Younger,* 57 Cal.App. 2d 200 [134 P.2d 323]; *Gerard* v. *Gerard,* 62 Cal.App.2d 672 [145 P.2d 702].) Recording is *prima facie* evidence of delivery. (Code Civ. Proc., § 1951.) The presumption of genuineness, execution and delivery, plus the evidence introduced, and the fact that there is no evidence that Mrs. Rich intended to exercise dominion over the deed is sufficient to uphold the finding that the deed of June 8, 1942 "was at the time of its execution and delivery, ever since has been and now is a valid deed of grant, and that ever since its said execution and delivery said defendants have been and now are the owners in fee simple absolute in and to and of the whole of the real property in the complaint in the above-entitled action described and the hereinbefore described property and every part of said real property."

The judgment entered in favor of the defendants and against the plaintiff is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 19, 1948.