## In re STOTLER et al.
### Nos. 54183, 54184.

United States District Court
S. D. California, Central Division.
July 28, 1953.

---

302

Lyle M. Stevens and J. V. Malouf, Long Beach, Cal., for bankrupts.

Craig, Weller & Laugharn, Los Angeles, Cal., for trustee.

HALL, District Judge.

The instant matter concerns review of two orders of the Referee, viz.:

1. An Order dated September 29, 1952 directing the bankrupts as plaintiffs in action No. LBC 18660 then pending in the Los Angeles County Superior Court to dismiss that action as to the Trustee in Bankruptcy in the within matter who is named as a defendant in that action;

2. An Order dated October 14, 1952 made by the Referee with findings of fact and conclusions of law which declared void the declaration of homestead filed by said bankrupts and which refused to allow the homestead as exempt.

1. The Order of September 29, 1952:

It is just as logical to permit a creditor to sue a trustee in the State Courts to establish the amount and validity of a claim, without the consent of the Bankruptcy Court, as it would be to permit the suit against the trustee by the bankrupts to establish the validity of their homestead. Such suits are clearly not permissible.

The bankrupt relies upon American Graphophone Co. v. Leeds & Catlin Co., C.C.S.D.N.Y., 174 F. 158, but that case is not at all in point as clearly appears from reading the opinion which shows that the Receiver was not a party to the patent case during the course of which one of the parties became bankrupt and a Receiver was appointed. The opinion indicated that the Receiver might be substituted as a defendant in the then pending case but does not indicate that such could be done without the prior approval of the bankruptcy court.

Section 2, sub. a of the Bankruptcy Act, 11 U.S.C.A., gives the bankruptcy court original jurisdiction to "(11) Determine all claims of bankrupts to their exemptions". That jurisdiction is exclusive, McGahan v. Anderson, 4 Cir., 113 F. 115; In re Lucius, D.C.Ala., 124 F. 455; In re Bordelon, D.C.La., 4 F.2d 285.

The Order of the Referee of September 29, 1952 directing the dismissal of the Superior Court action as to the Trustee in Bankruptcy should be, and is affirmed.

2. The Order of October 14, 1952:

That Order refusing to set aside the homestead of the bankrupt as exempt presents a more difficult question.

The Referee made findings of fact and conclusions of law. From them and from the files the undisputed material facts are: adjudication in bankruptcy was made May 5, 1952 on voluntary petitions with accompanying schedules filed that day; Schedule B–1 "Real Estate" lists the home of the petitioners, giving the legal description of the property and showing encumbrances by first and second deeds of trust, totaling $12,789.16 and listing as the value, "None above the encumbrances and homestead"; Schedule B–5 claims the above property as exempt and lists its value as "none". In the report of exempt property the Trustee refused to set the homestead aside as exempt on the ground that the declaration of homestead did not comply with the California laws in that "it failed to set forth * * * the estimated actual cash value of said premises;" the declaration of homestead was signed and acknowledged December 5, 1950 and duly recorded December 26, 1950 and provides inter alia as follows: "(5) I estimate the actual cash value of the land and premises hereinabove described to be ———— ($———) Dollars."

Section 1263 of the California Civil Code in its relevant portions provides: "The declaration of homestead must contain

* * * 3. A description of the premises; 4. An estimate of their actual cash value".

It would appear from the findings of fact and conclusions of law that the Referee was of the opinion, (1) that the inclusion of an estimate of the actual cash value of the premises is one of the mandatory requirements of Section 1263 of the California Civil Code, and (2) that the leaving of the blank spaces in the place back of the dollar sign and before the word "Dollars." in the recorded homestead did not constitute an estimate of the actual cash value of the premises in compliance with that section of the Code. I agree with the first conclusion but disagree with the latter, for reasons which presently appear.

No case has been cited by counsel, nor has any been found on independent research which appears to be directly or even closely in point.

It is, however, recognized as the law in California that the homestead laws are remedial and should be liberally construed. Southwick v. Davis, 78 Cal. 504, 21 P. 121; Rich v. Ervin, 86 Cal.App.2d 386, 194 P.2d 809; Ham v. Santa Rosa Bank, 62 Cal. 125; Feintech v. Weaver, 50 Cal. App.2d 181, 122 P.2d 606; Greenlee v. Greenlee, 7 Cal.2d 579, 61 P.2d 1157, 1159.

In Feintech v. Weaver, supra, a declaration of homestead made on a printed form designed for a $5,000 homestead contained the erroneous statement that the declarant was head of the family. The court construed the homestead liberally and held it to be valid to the extent of $1000, being the amount for homesteads of those who are not the head of a family; and quoted with approval, Greenlee v. Greenlee, supra, as follows: "The homestead laws have always been given a most liberal construction in order to advance their beneficial objects and to carry out the manifest purpose of the Legislature."

In Rich v. Ervin, supra, the court held that where the required acts have been *substantially* performed the construction of the declaration should be liberal but there must be a *substantial* compliance or the declaration will be strictly construed; and quoted from 26 Am.Jur., pages 10 and 11 as follows [86 Cal.App.2d 386, 194 P.2d 812]:

"* * * 'Homestead laws are founded upon considerations of public policy, their purpose being to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune. The statutes are intended to secure to the householder a home for himself and family, regardless of his financial condition—whether solvent or insolvent—without reference to the number of his creditors, and without any special regard to the extent of the estate or title by which the homestead property may be owned. * * *'"

In Southwick v. Davis, supra, the court had before it the provision of the Civil Code involved here in connection with a homestead which stated that the value of the property "does not exceed in value the sum of $5,000". [78 Cal. 504, 21 P. 122.] There the court said:

"The preservation of a homestead for the family is a marked feature of our law. It is enjoined by the state constitution itself. Of course it was necessary for the legislature to provide some manner by which one desiring to claim a homestead should make a public declaration of the fact, and designate the particular premises intended to be so claimed. But surely statutory provisions to that end should not be subjected to the rule of strict construction. Statutes for the purpose of carrying out the constitutional command are remedial, and should be liberally, or at least fairly and reasonably, construed. The homestead right is not one to be industriously pinched and circumscribed and circumvented and beaten back. If the *facts* of an honest homestead claim be present, a substantial compliance with statutory

provisions about making the claim public should be deemed sufficient.

"The Code provides, among other things, that the declaration must contain a description of the premises claimed, and 'an estimate of their actual cash value.' It is difficult to imagine the precise purpose of this provision. It is *admitted on all hands that the correctness or incorrectness of the estimate has no effect whatever upon the validity of the claim.* If the estimate were 10 times more than the actual value, or only one tenth as much, the claim would not be bad on that account. [Italics supplied except the word "facts".]

There is, however, a difference in some respects between a homestead on land worth more than $5,000, and one on land not worth more than that amount, and it may be that the legislature merely intended to have an estimate with respect to that particular value. If so, then, of course, the estimate in the case at bar was sufficient. At all events, *the provision is a very loose one,—too loose to have applied to it the rule of strict construction, even if that rule were not inapplicable for other reasons.* In ordinary affairs, out of court, if a man were asked his estimate of the value of a certain piece of property, and he should answer, 'Not exceeding $5,000,' the common inference would be that he thought it worth in the neighborhood of, but not more than, $5,000. Could it be fairly said that he had made no 'estimate' at all? And so, in the case at bar, considering all the circumstances above alluded to, we do not think, to say the very least, that the language used in the declaration was such a total failure to comply with the statute as made the homestead void." (Italics supplied.)

Approaching a consideration of the subject in the light of the principles announced in the foregoing opinions, we turn first to the Constitution, Art. XVII, § 1, which reads: "The Legislature shall protect, by law, from forced sale *a certain portion* of the homestead and other property of all heads of families." (Italics supplied.)

It is to be noted that the declaration referred to the actual cash value of the *"land and premises",* but that the code requires only such estimates as to the "premises".

█ If it is to be concluded that the leaving of the bank spaces means that the premises had *no* value, then it seems to me there was substantial compliance with the statute. It is not required that the estimate of value shall be accurate but it is only required that the estimate of value be the opinion of the declarant of the then "actual cash value" C.C. 1263. Ham v. Santa Rosa Bank, 62 Cal. 125; Southwick v. Davis, supra; Rich v. Ervin, supra.

The Referee apparently took the view that the blank spaces indicated that the homestead premises had *some actual cash value* in the *opinion* of the declarants and that the declarants did *not disclose* their opinion of that value. But it is just as logical, indeed it is more so, to conclude that where a document has a statement of the estimate of cash value followed by a dollar sign and a blank space, followed in turn by the word "Dollars" and nothing is filled in between the dollar sign and the word "Dollars" and the document is executed and acknowledged, that it means, no dollars, i. e., that the thing described has no actual cash value. That this conclusion is a logical one in the instant matter is indicated by the claim for exemption made in the schedules filed by the bankrupts where they placed no value on the homestead and where in Schedule B-1, they placed a value of none above the encumbrances of over $12,000 and homestead. But it may be urged that there could be no such thing as "land and premises" which have *no* value, which brings up the question, what can a homestead cover?

█ From the Constitution and the above quoted cases it is apparent that the purpose of a homestead is to preserve property in the title and name of the declarant beyond the reach of creditors. The Constitution as above noted requires the legis-

lature to protect from forced sale, *"a certain portion"*, of the premises. If there is a mortgage or trust deed ahead of the homestead that "portion" of the premises cannot be protected from forced sale by a declaration of homestead; and only that "portion" which has a value, if any, above the encumbrances can be placed beyond the reach of forced sale, hence it is the only "portion" of the "premises" which can be homesteaded; and thus is the only "portion" of the "premises" upon which the declarant has to express his opinion of the "actual cash value." "Actual cash value" is different than "value" or "actual value." The term does not mean "cost", Tappendorff v. Moranda, 134 Cal. 419, 66 P. 491; it cannot mean "market value"; it cannot mean the value of the right to remain in the home pending foreclosure; it cannot mean "speculative value"; and it can only mean the amount which in the opinion of the declarant at the time the declaration is made could be received *in cash* from a willing buyer for the value of the property over and above all encumbrances. That "actual cash value" may be none in the opinion of the declarant.

The conclusion follows, therefore, that the "premises" homesteaded by the declarants was their equity in the property over and above the encumbrances and that the leaving of blank spaces in the declaration of homestead after the dollar sign and before the word "Dollar," meant *no* value, that is, the equity of the bankrupts over and above the encumbrances had no value. There was thus substantial compliance with the Constitution and with Section 1263 of the California Civil Code. This construction implements the intent and purpose of the Constitution and homestead laws as declared by the Supreme Court of the State of California. A contrary decision would destroy such intent and obstruct and defeat the purpose of the Constitution and laws.

The Order of the Referee of October 14, 1953, refusing to set aside as exempt the homestead of the bankrupts is therefore reversed.

Counsel will prepare the appropriate judgment and submit it, under the rules.