[Civ. No. 8012.   Third Dist.   Dec. 6, 1954.]

LABOO SINGH, Appellant, v. CLARA BANES et al., Respondents.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Simeon S. Reibin for Appellant.

Albert M. King and William M. Savage for Respondents.

VAN DYKE, P. J.—Laboo Singh, plaintiff and appellant, hereinafter called "Laboo," sued defendants and respondents to quiet title to an undivided one-half interest in certain real property and for an accounting of the rents, issues, and profits therefrom. The defendants answered and Clara Banes, hereinafter called "Clara," cross-complained, seeking to have her title to the same real property quieted as against the claims of appellant. Judgment was rendered in favor of defendants and the decree quieted the title of Clara. Plaintiff appeals.

Laboo and one Amar Singh, hereinafter called "Amar," were members of the Hindu faith and natives of India. At all times material here they were ineligible to citizenship under the laws of the United States. The California Alien Land Law purported to prohibit such aliens from owning any interest in agricultural land within the State of California. The two had been associated as partners for a long time. In 1919 they acquired the real property involved in this action, which consisted of agricultural land located in Butte County. Amar, who seemed to have handled the business transactions of the partnership, took title to one parcel of the land and the other parcel was conveyed to both. Over a period of 20 years the two evaded the Alien Land Law by conveying the land from time to time to third persons, taking

back fictitious notes, mortgages and deeds of trust, thus lending a semblance of validity to their possession, use and ownership of the land. The partners remained in possession and exercised the rights and privileges of owners. Nothing was ever paid on the notes and mortgages executed by them and from time to time the land would be reconveyed in lieu of foreclosure and a new series of transactions would be initiated sometime within the period of two years, during which the law permitted them, for purposes of sale, to hold title after foreclosure. In 1945, at which time the title stood in the name of Amar, having been deeded back to him by one who was then holding as purported owner, Amar conveyed the property to Clara, who is the occidental wife of another Hindu.

In the trial of this case, and in support of his allegations of ownership, appellant introduced evidence to the effect that the transfer to Clara was simply another in a series of transactions entered into in order that the Alien Land Law be evaded and that the state should not take proceedings in escheat. Clara, on the other hand, claimed that the transaction whereunder she took title was a bona fide sale to her by Amar and that she had fully paid the purchase price and owned the property free of any claim, equitable or otherwise, which appellant could assert. Stated as briefly as may be, the following evidence supports the findings of the trial court in favor of Clara: In the spring of 1945 Amar desired to sell the property, along with the farm machinery which he and appellant used in operating the farm. To this end he listed the property with a broker for a price somewhat above $50,000. The broker advertised the property for sale, but was unsuccessful in obtaining a buyer. Amar's health was bad. The prune orchard on the property was old and had become infected with disease. In April, 1945, Amar declined an offer of about $45,000 for the farm and the equipment. The property remained unsold into June and during that month Amar suggested to Clara and her husband that they buy the land under arrangements whereby Amar would have the right to live on the property for the balance of his life or until he returned to India. He was to retain the equipment. On June 27, 1945, Clara's husband and Amar went to the office of an attorney. Amar told the attorney that he had agreed to sell the ranch to Clara and directed the attorney to prepare a deed conveying the property to her, and also to prepare for execution by her and her husband a

promissory note and mortgage securing the same, the note, payable on or before three years, to be for the full agreed purchase price of $33,000. He also instructed the attorney to prepare an additional agreement which would provide that the prune crop then growing on the property and approaching the time of harvest would be harvested by Amar and that from the proceeds of the crop there would be deducted the expense of growing and harvesting, the balance to be applied upon the indebtedness evidenced by the promissory note. The attorney prepared these papers. The deed was signed by Amar, the note and mortgage by Clara and her husband, and these two also signed the supplemental agreement concerning the right of Amar to harvest the crop and his obligation to apply the net proceeds thereof upon the note. The deed and the mortgage were recorded. Amar, as well as appellants, continued to reside on the property. The prune crop was harvested and netted nearly $15,000, which was credited upon the note. Amar died during the year and his estate went into probate, respondent Steadman being appointed executor of Amar's will. Since the death of Amar, Clara and her husband have farmed the property and in the course of time paid the balance owing on the promissory note to Amar's executor. Amar's estate inventoried at something over $80,000 and during the course of probate and before the beginning of this action appellant filed a ''claim'' in the estate, wherein he asserted that all of the assets thereof were partnership assets of the former partnership between himself and Amar. Included in the inventory were the mortgage and the note which Amar had received from Clara and her husband. These were specifically described in the claim and formed a part of the assets which appellant contended were those of the former partnership. His contentions were rejected by the executor and he filed an action to establish the existence of the partnership and its ownership of the assets inventoried in the estate. He obtained a judgment in his favor and upon stipulation it was ordered that the assets be reduced to money and that one-half be paid over to appellant. Concerning appellant's contentions that the transfer of the real property to Clara was merely colorable and that what she took she took in trust for appellant and Amar, much evidence in addition to that recited was received. There were introduced in evidence the deed, the mortgage, the note and the supplemental agreement, this latter being introduced over the objections of appellant. Some witnesses testified that after the deed was executed Clara made to the

witnesses admissions against interest by stating she was holding the title to the property in trust for Amar. Other witnesses testified that Amar during this period had declared the transaction to be merely colorable and undertaken to evade the Alien Land Law, while other witnesses testified that during the same period he made statements that he had sold the property to Clara. There was evidence taken as to the value of the property, when the deed was given; and the valuations given varied from $35,000 to sums far above that. There was testimony that Amar had declared he would not take less than $100,000 for it. Clara and her husband testified that the sale was bona fide and closely approximated in price the actual value of the property, particularly in view of the fact that the prune orchard, which occupied most of the property and the operation of which was the main use of the land, was old and diseased. Clara testified further that, although she had agreed that Amar, as well as appellant, could remain on the property after the deed was given, nevertheless she took possession of the property in the sense that she and her husband operated the same, harvested the crops and sold them after Amar had cared for the harvesting of the crop of 1945. She further testified that she ordered appellant off the place.

The trial court found the facts to be that Clara, since the passage of the deed from Amar on June 27, 1945, had been and still was the owner of and as such rightfully in possession of the real property involved and that appellant was not such owner nor entitled to possession. These were findings of ultimate fact, although attacked by appellant as being no more than conclusions of law. (*Murphy* v. *Bennett*, 68 Cal. 528 [9 P. 738]; *Gruwell* v. *Rocca*, 141 Cal. 417 [74 P. 1028]; *Kompf* v. *Morrison*, 73 Cal.App.2d 284 [166 P.2d 350].) The record does not disclose any request for more specific findings and under such circumstances the findings cannot be attacked as insufficient upon appeal. The court also found that appellant was estopped to deny the validity of the sale of the property by Amar to Clara by reason of the position taken and the things done by appellant in his claims against and in his action against the estate of his deceased partner. Also the court found that appellant had been guilty of laches in bringing this action. These findings as to estoppel and laches are also challenged as being unsupported by the evidence, but if the findings as to ownership support the judgment appealed from it is unnecessary

to consider appellant's contentions with regard to the findings of estoppel and laches.

Notwithstanding the long history of the title to the property involved and the prevailing custom in the general region in which the property is located under which custom Hindu farmers, believing themselves to be ineligible to own agricultural property, adopted means to evade the Alien Land Law; and notwithstanding that in view of these matters the trial court might have found that the deed and mortgage in question were colorable only and executed for the purpose of evasion, yet we hold that the trial court was fully supported in its decision that the deed and mortgage were bona fide and that, as a result of her payment of the price for the property as reflected in the note, Clara had become and was the owner of the land. The note and mortgage were presumptively what they purported to be. The evidence of Amar's attorney was that he had been instructed to prepare them because Amar had sold the land to Clara. ██ Although there is no specific evidence of a formal delivery of the documents, yet Clara possessed and introduced the deed in evidence and her possession and production amounted to prima facie evidence of delivery. (*Rich* v. *Ervin,* 86 Cal. App.2d 386 [194 P.2d 809].) ██ The evidence furnished by the instruments themselves, with the other evidence that we have related, affords ample support for the trial court's findings as to the bona fides of the transaction and the resulting ownership of the land by Clara.

Appellant and his counsel strenuously attack the findings of the trial court by contending that they do not in reality reflect what the trial court believed to be the truth concerning the transfer to Clara. They point out that while these transactions were taking place the Alien Land Law was believed to be constitutional and to prohibit the ownership of agricultural land by appellant and Amar. They say the trial court so believed and, therefore, considered that it was confronted with a most difficult choice, that is, that it must either declare the sale to have been bona fide and not colorable only or must declare the acts of all participants to amount to a conspiracy to violate the Alien Land Law. Said appellant: The court believed if it adopted the last alternative it would be compelled to deny any relief to any party to the action and leave them in such position that the State of California could and would take the land through escheat. Assuming the premises, we do not consider that the trial court was confronted

with such difficult alternatives. Believing the Alien Land Law to be valid, we think the trial court would have had no difficulty in declaring the actions taken by the parties to the transaction to be in violation of that act if it believed the sale to be a mere evasion of the law. The court would then have considered that all of the parties knew the penalties declared by the law which they were deliberately violating and all richly deserved to be left exactly where their felonious activities placed them. We do not think the trial court would have hesitated to hold the transactions to be invalid if in fact from the evidence it believed them to be so. And, on the contrary, we think that, since it held the sale to be bona fide, it did so because from the facts it so believed. Appellant argues that when the situation as a whole is considered, the mistaken belief of the parties, their attorneys and the trial court that the Alien Land Law was valid, worked the result that appellant did not receive a fair trial and that, therefore, this court ought to reverse the judgment appealed from. But, as we have said, we see nothing in the situation competent to sway a trial court in its findings of fact and we think that the trial court simply believed from all of the evidence that Amar, as the active business head of the partnership and in whose name the property stood, conveyed the land to Clara for an agreed and adequate price, which the partnership had received and of which appellant will take his share.

Appellant contends that the supplemental instrument prepared by the attorney and signed by Clara and her husband, and which covered the disposition of the growing crop on the land was erroneously admitted into evidence over objections that it was hearsay and amounted to self-serving declarations made by Clara and her husband who alone signed the instrument. The ruling of the trial court was proper. The testimony of the attorney had been that the document was one of a series which Amar had told him to prepare. ■ Of course, if the deed were executed and delivered with intent to convey title, as Clara maintained, the title to the growing prune crop would have passed to Clara and she might or might not have applied the crop proceeds to the purchase money note. The crop was unsevered and would have passed with the land. (14 Cal.Jur.2d, "Crops," § 6.) The supplemental document read as follows:

"We, the undersigned, agree that all crops now growing on the property which was this day deeded to the undersigned Clara N. Banes by Amar Singh, be and remain the property

of Amar Singh. He shall have the right to harvest and sell said crops, and all sums of money which he receives over and above the cost of growing and harvesting said crops shall be credited on the note which we this day signed, payable to Amar Singh in the sum of $33,000.00.''

■ Appellant having placed in issue the intent of Amar in executing the deed and accepting the note and mortgage for the price, it was competent for Clara to show that he had by this instrument retained certain control over the crop and its proceeds which without it he would not have had. Amar, having had this document prepared and signed by Clara and her husband, thus furnished evidence affecting his intent. This act in requiring the document's execution would lend support to an inference that, by his deed, he intended to convey title to the land. We find no error in the admission of this document into evidence.

■ Over appellant's objection, the court received in evidence the superior court record of a quiet title suit brought by Clara against the State of California. The suit had been commenced a month after the instant suit was brought. Clara sought in that action to show that her purchase of the property was what it purported to be, was bona fide and involved no violation of the Alien Land Law. She prayed it be declared the property was not subject to escheat to the state. We are unable to perceive that the file was admissible in her behalf as in any material and permissible way proving or tending to prove any issue in the instant case. However, if error, it was clearly nonprejudicial and under the constitutional admonition would furnish no ground for reversal.

■ Appellant contends further that the court abused its judicial discretion in denying his motion for new trial. In the main this motion was based upon affidavits as to evidence not received during the trial and which appellant neither knew about nor could with reasonable diligence have discovered. After the decision had been made two persons told appellant that they had heard Clara admit she was not the owner of the property, but that she was holding the same for the benefit of Amar. The affidavits of these persons were submitted in support of the motion. Obviously, this testimony, had it been received, would have been cumulative only. Other testimony had been given to the same effect by other witnesses. Under such circumstancs much must be left to the discretion of the judge who tried the case. He is the best judge as to whether or not the proffered testimony, had it been received, would

have changed the decision, and as to whether or not had a new trial been granted, its receipt would probably result in a different termination of the litigation. We think this is a case wherein we must accept and should accept the decision of the trial court and we hold that in denying a new trial it did not, upon this record, abuse its judicial discretion.

We think further discussion is unnecessary.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 2, 1955.