**In the Matter of James M. MORSE, Bankrupt.**

**No. 155,309.**

United States District Court
S. D. California,
Central Division.
Sept. 29, 1964.

Craig, Weller & Laugharn, Los Angeles, Cal., for petitioner on review.

Louis R. Eglash, Shutan & Pitt, Beverly Hills, Cal., for respondent on review.

ALBERT LEE STEPHENS, Jr., District Judge.

The Court has before it a Petition for Review of the Findings of Fact, Conclusions of Law and Order of a Referee in Bankruptcy. Jurisdiction to hear the petition is conferred upon the Court by Title 11, U.S.C. § 67, sub. c.

Pursuant to a voluntary Petition in Bankruptcy, James M. Morse was adjudicated a Bankrupt on May 7, 1963. In his schedules he claimed a homestead as exempt under the laws of California pertaining to homesteads. The Trustee in his report of exempt property refused to exempt the homestead claim on the ground that the Bankrupt failed to comply with the law on homesteads in that he failed to set forth an estimate of the actual cash value of the premises. California Civil Code, Section 1263, provides in pertinent part:

"The declaration of homestead must contain:

" * * *

"3. A description of the premises;

"4. An estimate of their actual cash value."

The Declaration of Homestead in question contained the following:

"(5) That they estimate the actual cash value of the land and premises hereinabove described to be in excess of Twelve Thousand Five

Hundred and 00/100 Dollars ($12,-500.00)."

The Referee, relying upon a recent decision by the undersigned District Judge In the Matter of John Eade, D.C., filed April 1, 1964, 237 F.Supp. 320 ruled that the above quoted statement was a substantial compliance with requirements of the homestead law and that the homestead was valid and should be exempt.

The testimony of the attorney who prepared the homestead declaration was taken at the hearing before the Referee on the objections to the Trustee's report of exempt property. The attorney testified that he had mentally deducted the balances due on the outstanding first and second encumbrances from the market value of the property and concluded that $12,500.00 was an approximation of the Bankrupt's equity and that he felt that he was playing it safe by putting in the term "in excess of." Objections were made to the admissibility of this testimony.

In Finding of Fact No. 5, the Referee found as follows:

> "5. That the fair market value of said real property at the time said declaration of homestead was executed and filed was approximately $37,-000.00; however, the amount of $12,500.00 inserted in paragraph (5) of said declaration in conjunction with the words 'in excess of' does represent a reasonable estimate of the declarants' equity in said real property."

In his certificate on review, the Referee states that the question on review is, "Did the Referee err as a matter of law in holding that a homestead is valid against the Trustee where the declarant inserts an estimate of the value of his equity in response to a statement in the homestead declaration requiring insertion of an estimate of actual cash value?"

■ This question would have to be answered in the negative and the Eade case is direct authority for this conclu-

sion. However, it appears to the Court that the question is whether the Declaration of Homestead contained an estimate of value at all, whether it be value of the claimant's equity or the fair market value of the premises. This question must also be answered in the negative with the result that the Declaration of Homestead is invalid.

See Ames v. Eldred, 55 Cal. 136 (1880), in which case the Court held that a statement "that the actual cash value is $5,000 and over" is not to give an estimate of the actual cash value. The argument against this conclusion may be summarized as follows: Ames v. Eldred is an old case. The modern authorities have adopted a liberal construction of the statute and require only substantial performance of its requirements. The early cases adopted a rule of strict construction; therefore, Ames v. Eldred can no longer be considered as authority on this point.

If, indeed, it is true that the result in Ames v. Eldred resulted from a strict construction of the statute, and subsequently a liberal construction has been adopted, the argument is valid. An examination of the beginnings of the Homestead Act and the early cases with respect thereto is therefore appropriate.

California was admitted to the Union in 1850. Prior to that, in 1849, the people adopted California's first Constitution. Article 11, Section 15, provided for protection of the homestead of the heads of families against forced sale.

On April 21, 1851, a Homestead Act was adopted by the Legislature. There were others following in 1860, 1862 and 1868. Volume 5 of the California Reports contains the first case of homestead litigation and almost every volume of the California Reports from that time, 1855, to Volume 54, 1879–80, contains opinions on the subject of homesteads.

In 1872 California adopted the Civil Code which included Section 1263 specifying what the declaration of homestead must contain. Today Section 1263 of the Civil Code does the same thing.

Section 4 of the Civil Code, also adopted in 1872, provided:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. The Code establishes the law of this State respecting the subjects to which it relates, and its provisions are to be liberally construed with a view to effect its objects and to promote justice."

From 1872 to this day, the language of Section 4 of the Civil Code has remained unchanged. The rule that Civil Code § 1263 specifying the contents of a Declaration of Homestead is to be liberally construed was established by the Legislature in 1872 and is not a creature of the judiciary. California's present Constitution was adopted in 1879, containing provision for homestead protection in Article XVII, Section 1.

The first case to consider Civil Code § 1263 was Ashley v. Olmstead, 54 Cal. 616 (1880). At that time the Supreme Court sat in departments. The decision was by Department 2. Justice Myrick authored the opinion, and Chief Justice Morrison and Associate Justices Thornton and Sharpstein concurred. The Declaration of Homestead which is the subject of the opinion contained no estimate of its actual cash value.

The opinion quotes Section 4 of the Civil Code and notes that Section 1263 is to be liberally construed and then points out at page 620:

"There is nothing in § 1263, Civil Code, as applicable to this case, requiring construction. The language is plain that the declaration *must contain* an estimate of the actual cash value of the premises.

"We are asked to construe the words *must contain* so as to mean *need not contain.* We do not feel at liberty to do so. We are not here to legislate, but to declare the law as we find it; and in this instance we find it plainly written. The Constitution and the laws of this State are beneficent in regard to protecting families from the misfortunes and improvidence which frequently overtake the heads of families; and clear, plain, simple, and direct means are provided for parties who wish to avail themselves of the benefits guaranteed. In this case the fault is not with the law."

In the next volume, 55, and in the same year, 1880, is found the case of Ames v. Eldred, 55 Cal. 136 (1880). The decision was from Department 2 and the author was Justice Myrick. Justices Thornton and Sharpstein concurred. This second opinion on the subject had the same author and the same Court as the first such decision, lacking only the Chief Justice, who apparently did not hear the second case. The whole decision may be conveniently quoted:

"The only question in this case is as to the sufficiency of the declaration of homestead. Referring to the valuation of the premises, the declaration states 'that the actual cash value is $5,000 *and over.*' Section 1263 Civil Code provides that the declaration *must* contain an estimate of the actual cash value.

"To say that a piece of property is of the value of $5,000 and over, is not to give an estimate of the actual cash value: it is not to say whether the property is worth $5,000 or $50,000. (Ashley v. Olmstead, 54 Cal. 616.)"

If it can be said of Ames v. Eldred that the Supreme Court of California applied a rule of strict construction to the statute and required a literal compliance with its terms and that a different result under a liberal construction requiring only substantial compliance with its terms is to be expected today, then the precedential value of the case may be questionable. However, the Court rendering the opinion had already recognized the rule of liberal construction and had it in mind as evidenced by reference to Ashley v. Olmstead. The later case of Schuyler v. Broughton, 76 Cal. 524, 18 P. 436 (1888), which all authorities recognize as applying the rule of liberal con-

struction and expressly requiring only substantial compliance with the statute, cites Ames v. Eldred among the commendable precedents.

It might be argued that a statement of "$5,000 and over" or "in excess of Twelve Thousand Five Hundred Dollars" should be accepted as substantial compliance if such expressions substantially fulfill the legislative purpose. A departure from the rule of Ames v. Eldred would be urged on the ground that the legislative purpose had not been articulated by the Courts at the time that case was decided.

The Courts ventured a statement of legislative purpose first in Schuyler v. Broughton, supra:

"* * * One object of the statute, requiring * * * an estimate of the value * * * was no doubt to give notice to the world whether or not the value was within the statutory limit of $5,000; and, if not, the excess of value above such limit. If within the $5,000 limit, that fact is all that creditors, present or future, can be interested in knowing. It is in such a case beyond their reach.

"If the valuation, however, is in excess of $5,000, they are interested in knowing the extent of the excess of value, and, so far as the public is concerned, we can see good reasons for holding homestead claimants to greater strictness in the one case than the other."

This is to say that if the value is in excess of the statutory limit, the Court could see that there was a reason to require a more definite statement of value than if it is worth less than the limit.

In Southwick v. Davis, 78 Cal. 504, 21 P. 121 (1889), the Court said that it may be that the Legislature merely intended to have an estimate with respect to the value over and above the statutory limit. In Samuels v. Delucchi, 286 F.2d 504, 506 (9th Cir. 1961), the Court of Appeals for the Ninth Circuit said:

"* * * we turn to a determination of what constitutes substantial compliance with § 1263, subd. 4. This determination requires ascertaining the purpose of § 1263, subd. 4. It would seem that the purpose of § 1263 is to make all homestead claims public and available as a source of information to the public. In line with this, the probable purpose of § 1263, subd. 4, is to give actual and prospective creditors of the homesteader some rough estimate of the value of the homesteader's interest in the premises, so that they can determine whether there is any excess value over and above the amount of the homestead exemption allowed, which excess the creditors could proceed against."

The Court then refers to and quotes from Schuyler v. Broughton and Southwick v. Davis.

Very little information is given to creditors by some of the expressions of value which have received judicial acceptance, sometimes with reluctance. However, statements such as "$5,000 and over" or "in excess of Twelve Thousand Five Hundred Dollars", which state no determinable amount, are essentially useless. On no conceivable hypothesis do they furnish even a ground for speculation as to what excess the creditors might proceed against. They are materially lacking in substantially fulfilling the legislative purpose which the Courts have outlined.

In Lynch v. Stotler, 215 F.2d 776, 778 (9th Cir. 1954), the United States Court of Appeals for the Ninth Circuit included Ames v. Eldred among the citations after saying:

"We think we are compelled to deny the homestead on the basis of the underlying reasoning of the following California cases."

Since rendering the decision in the Ames case, 84 years have passed. The result reached in that case has been criticized. The Legislature has amended the statute, but only in other particulars,

584

apparently being satisfied with the liberal interpretation which this portion of the statute has received at the hands of the judiciary. Ames v. Eldred appears to be a clear precedent which this Court is bound to follow.

A careful examination of all of the pertinent cases since Ames v. Eldred results in the conclusion that in this field there has been remarkably little conflict between the cases. The rules that the statute should receive a liberal construction and that substantial compliance with its terms is all that is required have been consciously and consistently followed. The cases which have been referred to as applying a strict construction are those which have disallowed the exemption because the declaration was not complete.

In order to make this study of the cases available without unduly prolonging this Memorandum of Decision, the Court has prepared and filed with this memorandum an Addendum to the Opinion. Reference to the Addendum is invited for a more detailed analysis of the cases.

■ Evidence other than the Declaration of Homestead itself is not admissible to supply some fact which is required to be included in the declaration, but has been omitted. But if consideration is given to the testimony of the attorney who prepared the Declaration of Homestead, it does not support the proposition that the words "in excess of Twelve Thousand Five Hundred Dollars" constituted an estimate of the homesteader's equity. It strikes the Court that these words were to give latitude to the estimate. They were in fact an effort to avoid being pinned down to a specific figure, to avoid an estimate of value where one is required. The statute imposes no duty to be accurate, but it does impose a duty to give some information, for whatever purpose the Legislature had in mind.

From these words,

"(5) That they estimate the actual cash value of the land and premises hereinabove described to be in excess of Twelve Thousand Five Hundred and 00/100 Dollars ($12,-500.00)."

no determinable sum nor any approximate value can be ascertained. The declaration is invalid.

■ This result may indeed be unfortunate for a person who has been comforted with the thought that he has a valid homestead. But as long since pointed out, the statute is an enabling act which makes it possible to obtain its beneficent protection by compliance with its simple requirements.

■ It has been accepted that one purpose for requiring a statement of value was to accord creditors the advantage of information useful in connection with the extension of credit, little though it be. To accept a meaningless statement as an estimate of value is to abandon the only purpose which the Courts have imagined the Legislature intended by this requirement. It may be safely said that if some consider this a harsh result, creditors are not among them.

The advice tendered by the Supreme Court in 1880 is still good:

"We would suggest that in preparing a paper of the importance of a declaration of homestead, a very commendable prudence would be to first look at the statutes upon the subject, and then follow them."

The Referee's order sustaining objections to the Trustee's report of exempt property is reversed.

ADDENDUM

It must be recognized that the concept of liberal construction may have changed so drastically in 84 years that later cases, whether dealing with precisely the same point or not, are irreconcilable with the early cases. An examination of the evolution of authority on this subject is necessarily lengthy and perhaps tedious, but the task having been undertaken, the result may as well be set out for critical examination.

To state the conclusion in advance, no collision of authority is found, nor does

it appear that there has been any substantial departure from the California Supreme Court's original concept of Civil Code Section 1263. The case history on the subject follows.

Reference to Ashley v. Olmstead, 54 Cal. 616 (1880) and Ames v. Eldred, 55 Cal. 136 (1880), together with appropriate quotation from the opinions appears in the Memorandum of Decision.

In 1881, the same Court as decided the Ashley and Ames cases held a homestead declaration by the wife invalid for failure to state that her husband had not made such declaration a clear requirement of the statute. Booth v. Galt, 58 Cal. 254 (1881).

In 1884 Department 1 of the Supreme Court of California held that the statutory requirement of "an estimate of their actual cash value" was met by a declaration that "the cash value of the said above described premises is three thousand dollars." Read v. Rahm, 65 Cal. 343, 4 P. 111 (1884). The Justices participating are not identified, but a hearing in bank was denied and the members of the whole Court were the same as in 1880.

In 1885 the Court adopted the opinion of its Commissioners that the words, "the cash value of said homestead is about $4,000, gold coin," was a sufficient statement of value. Graves v. Baker, 68 Cal. 134, 8 P. 693 (1885). The members of the Court were the same except possibly Justice Temple had succeeded Justice Ross, who resigned during the year.

In 1888 with Justices Sharpstein and Thornton still on the Court and concurring in the opinion written by Chief Justice Searls, the Court, sitting in bank, decided in Schuyler v. Broughton, 76 Cal. 524, 18 P. 436 (1888), that the words, "And we do place the value of said land at a sum not to exceed sixteen hundred dollars," was a sufficient statement of value, citing every earlier case mentioned in this memorandum except Booth v. Galt, supra. It would seem that the Court considered the preceding cases to have followed a consistent course and to empha-size that this was a course of liberal interpretation, two paragraphs of the opinion may be quoted:

"The statute in reference to homesteads is a remedial measure, and as such is to be liberally construed. We are not at liberty to disregard the statute; its provisions are binding upon us, and in the absence of a compliance with them we can only declare the result flowing therefrom.

"The concurrence of several things are necessary, under our statute, before exemption can be allowed. Where these several acts have been substantially performed, and where the declaration contains the essence of the statutory requirements, the construction should be so liberal as to advance the object of the constitution and statute." (p. 525, 18 P. p. 437)

The Court then further explained the view of the Court in the following words:

"Not that the plain provisions of the statute can be dispensed with in either, but what is a substantial compliance with the terms of a statute is a question which is often to be determined by the nature, object, and effect of the act or acts set up as constituting compliance." (p. 526, 18 P. p. 438)

The next reported case, decided on the same day as Schuyler v. Broughton, Beck v. Soward, 76 Cal. 527, 18 P. 650 (1888), also written by Chief Justice Searls, holds that an acknowledgment by the wife making a declaration of homestead upon her separate property was not in proper form. The case turned upon the provisions of Civil Code Section 1186 prescribing the form of acknowledgment for married women, rather than upon the provision relating to homesteads.

In 1889, with Justice Sharpstein concurring, and at a time when Justice Thornton was still on the Court, although not participating in the decision, the Court, sitting in bank, held the words, "does not exceed in value the sum of $5,000," a compliance with the require-

ment that the actual cash value be stated. Southwick v. Davis, 78 Cal. 504, 21 P. 121 (1889). The Court said of the requirement in question:

" * * * It is difficult to imagine the precise purpose of this provision. It is admitted on all hands that the correctness or incorrectness of the estimate has no effect whatever upon the validity of the claim. If the estimate were 10 times more than the actual value, or only one-tenth as much, the claim would not be bad on that account." (p. 507, 21 P. p. 122)

Further:

" * * * At all events, the provision is a very loose one,—too loose to have applied to it the rule of strict construction, even if that rule were not inapplicable for other reasons." (p. 507, 21 P. p. 122)

This statement followed a declaration that the statute should be liberally construed and it is submitted that among the other reasons is Civil Code Section 4. Unfortunately, the term, "strict construction," had now crept into the discussion of this subject and readers inferred that strict construction had at some prior point been the Court's measure of the statute. That such an inference was entirely erroneous should be abundantly clear.

Boreham v. Byrne, 83 Cal. 23, 23 P. 212 (1890), was a decision based upon the Homestead Act of 1860 which antedated the Codes and hence is irrelevant to a discussion on construction of Civil Code Section 1263.

Apprate v. Faure, 121 Cal. 466, 53 P. 917 (1898), pointed out:

" * * * The rights of the homestead claimant are created by the filing of a declaration of homestead in the form specified by the statute, coupled with the actual present existence of the facts recited in the declaration." (p. 467, 53 P. p. 917)

No one disputes to this day that the truth of the recitals of the homestead declaration must be established by evidence if challenged. Of course, insofar as the statement of value is concerned, it need not accord with what may later be found to be the true value provided that it is in truth the declarant's estimate of value.

The case of Reid v. Englehart-Davidson etc. Co., 126 Cal. 527, 58 P. 1063 (1899), is criticized as being a strict construction. The Court held the declaration invalid because it could not be told from the language of the declaration whether the declarant was or was not the head of the family. This is the first case mentioned in which there is no specific reference to the requirement of liberal construction, yet Ashley v. Olmstead, 54 Cal. 616 (1880), was cited as authority. It must be conceded that from the declaration as a whole, no inference could be drawn that the declarant was head of the family. Thus, one of the statutory requirements was entirely omitted. No case, early or late, has yet acknowledged the validity of a Declaration of Homestead where any one or more of the elements which the statute says *must* be stated could only be supplied by extrinsic evidence.

In Roth v. Insley, 86 Cal. 134, 24 P. 853 (1890), a concurring opinion pointed out that the claimant did not show in his declaration that he was head of a family. The declaration was held to be valid as one made by a person other than the head of a family. The claimant was at the time of his declaration the head of a family consisting of himself and his dependant mother. Civil Code Section 1261.

Tappendorff v. Moranda, 134 Cal. 419, 66 P. 491 (1901), held invalid a declaration which stated the "actual cost value" rather than the actual cash value, citing among other cases the Reid case, just mentioned, and Ames v. Eldred, 55 Cal. 136 (1880), which, while holding "$5,000 and over" an unacceptable statement of value, referred for authority to Ashley v. Olmstead, 54 Cal. 616 (1880), which initially noted the requirement of liberal construction.

In a comment in the 1937–1938 California Law Review, Volume 26, page 241

at 249–50, the writer complains of narrow decisions and technicalities impeding the fullest enjoyment of the benefits of the Homestead Laws. He suggests a revision of the attitudes of the Courts or a legislative act upholding a substantial compliance with the statute governing the formal declaration. However, he concedes that, "practically any estimate which reasonably states a determinable sum is upheld."

In 1943 it was held that a homestead declaration by the wife was invalid for failing to state that her husband had not previously made such a declaration. Schuler-Knox Co. v. Smith, 62 Cal.App.2d 86, 98, 144 P.2d 47 (1943). The purpose for requiring such a statement is to show that the husband and wife are not claiming two homesteads. Santa Barbara Lumber Co. v. Ross, 183 Cal. 657, 192 P. 436 (1920).

In Rich v. Ervin, 86 Cal.App.2d 386, 194 P.2d 809 (1948), the Court phrases the considerations before it in different terms than previously noted:

" * * * Where the required acts have been substantially performed the construction of the declaration should be liberal, but there must be a substantial compliance or the declaration will be strictly construed. The statement of an untruth relative to an essential requirement vitiates the document as the declaration must contain certain information. Civ. Code, sec. 1267." (p. 390, 194 P.2d p. 812)

Following what was conceived to be a liberal construction of the statute, a Judge of this Court held that failing to fill in a blank with a dollar amount where a printed form provided, "I estimate the actual cash value of the land and premises hereinabove described to be —————— ($——————) Dollars," constituted an estimate that the premises were of no actual cash value and that this complied with the statutory requirement. In re Stotler, 114 F.Supp. 301 (S.D.Cal.1953).

This was reversed in Lynch v. Stotler, 215 F.2d 776 (9th Cir. 1954), the Court noting that almost the entire form was left blank.

In the case of In re Mapes, 120 F.Supp. 316 (S.D.Cal.1954), the Court held that the failure to state the name of the wife in a declaration filed by the husband in the face of the express statutory requirement that the name of the spouse be stated, rendered the declaration invalid, and that it could not qualify as a declaration by a person who was not head of a family since the declarant actually was head of a family. This ruling is directly contrary to Roth v. Insley, supra, (1890). The Court relied upon Hansen v. Union Sav. Bank, 148 Cal. 157, 82 P. 768 (1905), which held that a married woman living with her husband could not make a declaration of homestead under Civil Code Sections 1266 to 1269, but only under Sections 1262 and 1263.

Feintech v. Weaver, 50 Cal.App.2d 181, 122 P.2d 606 (1942), held that a woman living with an adult son was not the head of a family, but a Declaration of Homestead made on a form reciting that she was the head of a family was valid as a homestead of a person "not head of a family," when it contained all of the requisites of such a declaration. The statement that she was head of a family was treated as surplusage. The Court relied upon Roth v. Insley, supra, as the closest authority.

Blagg v. Bass, 261 F.2d 631 (9th Cir. 1958), holds that where there is not sufficient evidence to sustain the declaration that the claimant is head of a family, the declaration is valid as a declaration by a person other than the head of a family if it contains the requisite information. The statement that claimant is head of a family was treated as surplusage. Feintech v. Weaver was held to be controlling. In re Mapes was expressly overruled to the extent inconsistent, thereby not challenging the validity of the Mapes declaration as head of a family, but only as qualifying for the

lesser protection. There is a distinction to be noted since in the Blagg case, the declarant was not shown to be head of a family and, therefore, could be classified among "other persons," while in the Mapes case, the declarant was in fact the head of a family.

Considering the Mapes case overruled, the case of Hansen v. Union Sav. Bank, 148 Cal. 157, 82 P. 768 (1905), is the one case which is clearly out of line with other decisions. While a married woman may be authorized to make a declaration for the joint benefit of her husband and herself, she is nowhere in the homestead law characterized as the head of a family while living with her husband. Why, then, would she not be a person "other than the head of a family," entitled to a homestead accorded to other people in the same category, provided that she is not the beneficiary of some other homestead? In light of the cases following the 1890 case of Roth v. Insley, it should be considered controlling.

The Blagg v. Bass case refers to Johnson v. Brauner, 131 Cal.App.2d 713, 281 P.2d 50 (1955), as containing a good review of the California cases. The Johnson case is an excellent example of both liberal construction of the statute with a view to effecting its objects and to promoting justice and a consideration of the language used to ascertain if it substantially complies with the statute. The question was whether it could be said that the declaration indicated that it was for the joint benefit of husband and wife. The Court held that as a matter of law a declaration of homestead by the wife under Civil Code § 1263 was bound to be for their joint benefit. A statement to that effect was therefore superfluous and could be omitted. It is most notable that the Court did not hold that the fact in question need not appear from the declaration.

The latest and probably the best statement upon the subject of construction of this statute is to be found in Samuels v. Delucchi, 286 F.2d 504 (9th Cir. 1961). Judge Orr, speaking for the Court, says on page 505:

"Section 1263 of the Civil Code of the State of California declares as necessary to the filing of a valid declaration five statements. From a cursory examination it would appear that two conflicting lines of California cases regarding how this section is to be applied have emerged. One group of cases has apparently applied the rule of strict construction. However, close examination reveals that most of these cases have involved complete omission of one of the required statements and hence have raised no issue of substantial compliance. On the other hand there is a second group of cases directly involving the question of substantial compliance. These cases hold that while each of the requirements of § 1263 must be complied with, the section should be liberally construed in order to promote the underlying purposes of the Homestead Act."

Further in the decision appears the following at page 506:

"Whatever may be said of the earlier holdings of the California courts, we think the later decisions have established the following rule: Since the homestead right is a purely statutory right, the conditions established by the statute in § 1263 must all be met, but in keeping with the underlying purpose of the statute a liberal rule of substantial compliance is to be applied."

It is respectfully submitted that the most accurate thing that may be said of the "earlier California cases" is that they have consciously and very consistently followed a liberal rule of substantial compliance.

In the case of In re Stotler, 114 F.Supp. 301 (S.D.Cal.1953) one Judge of this

Court concluded that actual cash value cannot mean market value:

"* * * and it can only mean the amount which in the opinion of the declarant at the time the declaration is made could be received *in cash* from a willing buyer for the value of the property over and above all encumbrances."

In the case of In re Dulgarian, 182 F. Supp. 954 (S.D.Cal.1960), another Judge of this Court concludes:

"* * * The plain meaning of 'actual cash value' is market value of the premises, including encumbrances, on the current market. No cogent reason appears to disturb that meaning."

Nevertheless, the same opinion acknowledged the rule of substantial compliance with the statute as being sufficient and held that a good faith estimate of "3000 Equity" is a sufficient statement of value.

Of the two viewpoints, the Court of Appeals for the Ninth Circuit in the Samuels case, supra, is of the opinion that in light of the 1945 amendment to Section 1260 of the Civil Code, among other stated reasons, it is probably more important to state the value of the homesteader's equity.

It is respectfully submitted that the Court's approach in the case of In re Dulgarian, supra, is unacceptable because if it is plain that "actual cash value" is market value, a statement of the value of the homesteader's equity is just as plainly not a statement of actual cash value and not substantial compliance. The California cases have consistently held that when there is a plain requirement in the statute, it must be met. No substitute is acceptable. However, as the foregoing case history indicates, even the Judges of this Court have come to opposite conclusions as to the meaning of actual cash value. Accepting the thesis that the provision is a very loose one, as noted in 1889 by the California Supreme Court, then it is consistent with the policy of the law to recognize as substantial compliance any statement which may reasonably be said to be an estimate of actual cash value, within any acceptable meaning of that term.

It must be acknowledged that it is established by the California cases that a statement of value which does not exclude encumbrances is an acceptable statement of value and that Samuels v. Delucchi, supra, establishes that a statement of the equity of the homesteader is also acceptable, at least when it is so labeled.

In the Matter of Eade, D.C., 237 F. Supp. 320 this Court took the next step and held on April 1, 1964, that a statement of the homesteader's equity, even though not so labeled, was substantial compliance, relying in part upon the change made in Civil Code Section 1260 in 1945, but more generally upon the fact, to quote from Southwick v. Davis, 78 Cal. 504, 21 P. 121 (1889):

"* * * At all events, the provision is a very loose one,—too loose to have applied to it the rule of strict construction, even if that rule were not inapplicable for other reasons."

There has been no significant departure from the rule of liberal construction decreed by the Legislature and acknowledged by the Supreme Court in the very first case on the subject, and there has been no departure from the doctrine of substantial performance or compliance since these words were first used in this relationship in Schuyler v. Broughton, 76 Cal. 524, 18 P. 436 (1888). Neither has there been any departure from the original position that Courts are not at liberty to disregard the statute and must declare the results flowing from a lack of at least substantial performance, namely, that such a declaration is invalid.

The phrase "in excess of Twelve Thousand Five Hundred Dollars" is the

exact equivalent of the phrase "$5,000 and over." In 1880 the latter phrase was held not to be an estimate of the worth of the property by the Supreme Court of California which was currently adjudicating a series of homestead cases and according the statute a liberal construction and looking only for substantial compliance with the statutory requirements. Now this Court is faced with the same question. Applying the same tests of liberal construction and substantial compliance to the same statute, can we reach a different result? If so, on what basis?

The words themselves have no more precise meaning than before. They neither indicate nor necessarily imply a determinable sum or even a range of value. In 1889 the Supreme Court said, "It is difficult to imagine the precise purpose of this provision." But this same Court and others, too, have tried to do so. In every case the purpose assigned relates directly to a determinable sum. None of the supposed purposes would be served by less.

It is argued that this was intended to be an estimate of the equity of the homesteader and that this equity was in fact about $12,500.00. In excess, perhaps, but not much in excess of $12,500.00 is what was intended. The words, "in excess," were just to play it safe. None of these facts or intentions are ascertainable from the declaration. They enter the picture through extraneous evidence. Evidence is admissible and, in fact, required to prove the facts stated in the declaration if they are challenged. Apprate v. Faure, 121 Cal. 466, 53 P. 917 (1898). But evidence other than the declaration itself is not admissible to supply some fact which is required to be declared. Esten v. Cheek (9th Cir., 1958) 254 F.2d 667; Towers v. Curry (9th Cir. 1957) 247 F.2d 738; Carey v. Douthitt, 140 Cal.App. 409, 35 P.2d 632 (1934); Olds v. Thorington, 47 Cal.App. 355, 190 P. 496 (1920); Reid v. Englehardt-Davidson Mercantile Co., 126 Cal. 527, 58 P. 1063 (1899).